UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated, Plaintiffs, | : | C.A. 02-190S |
| v. | : | |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ and THEODORE R. FRENCH, Defendants. | : | |

**DEFENDANTS' MOTION FOR RECONSIDERATION**
**AND CLARIFICATION OF THE CLASS CERTIFICATION ORDER**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, defendants hereby move this Court to reconsider and clarify its Decision and Order, dated May 11, 2005, on plaintiffs' motion for class certification. The bases for defendants' motion are set forth in the accompanying memorandum of law.

Dated: Providence, Rhode Island
June 1, 2005

Respectfully submitted,

ADLER POLLOCK & SHEEHAN P.C.

By: [signature]
John A. Tarantino (#2586)
Paul V. Curcio (#1965)

One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June 2005, I caused a true copy of the within to be served by first-class mail, postage prepaid, to:

*Counsel for Lead Plaintiffs*:

William M. Kolb, Esq.
Kaplan & Kolb Inc.
1100 Turks Head Building
Providence, RI 02903

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

Ira M. Press, Esq.
Kirby, McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, NY 10022

*Co-Counsel for Defendants*:

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

Shelley L. Zimmerman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated, | : | |
| Plaintiffs, | : | C.A. 02-190S |
| v. | : | |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ and THEODORE R. FRENCH, | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE CLASS CERTIFICATION ORDER**

Defendants respectfully submit this memorandum of law in support of their motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, for reconsideration and clarification of this Court's Decision and Order, dated May 11, 2005 (the "Order"), on plaintiffs' motion for class certification.

This motion is limited to the Court's disposition of the class certification motion of the Local 710 Funds. Respectfully, we suggest that the Court's focus appears to have been on the ultimate merits of the defenses applicable to the Local 710 Funds, rather than on whether those defenses will become a major focus of the litigation. For these reasons, the Order reads more like the denial of a motion for summary judgment than like the grant of a motion to certify a class. We ask for reconsideration and clarification.[1]

---

[1] Defendants also ask for clarification that the Court's recitation of plaintiffs' H-1 and OmniQuip allegations at page 5 of the Order in no way undoes or contradicts the Court's determination in its Decision and Order, dated June 15, 2004, that plaintiffs' H-1 and OmniQuip allegations fail to state a claim. *See, e.g.*, *In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*, 1992 WL 220753, at *1 (C.D. Cal. 1992) (limiting class certification to

The essential question presented on the motion with respect to the Local 710 Funds was whether the proper adjudication of their claim at trial would require the finder of fact to analyze, hear evidence on, and resolve factual and legal defenses that were not presented by the claims of the other class members. The motion to certify did not call for a determination of the ultimate merits of these defenses, but instead posed the question of whether legitimate defenses to be tried were presented, and whether the existence of these defenses rendered the Local 710 Funds atypical of the class of claimants the complaint alleges to exist. Among these unique defenses were:

1. Whether the Local 710 Funds could rely on the fraud on the market theory that the rest of the class would be relying on?

2. Whether the Local 710 Funds could sustain the elements of a fraud claim when they had admitted, through their agent Bear Stearns, that they were not in fact misled by Textron?

3. Were the Local 710 Funds atypical because of their decision to continue purchasing shares of Textron stock even after the alleged fraud had been disclosed, in large part because they had already factored into its valuation analysis the possibility that the entire V-22 program might be cancelled?

4. Were the Local 710 Funds atypical because they profited during the class period from the sale of Textron stock at prices that were allegedly fraudulently inflated?

The motion to certify did not present for resolution by the court the ultimate merit of any of these defenses. *See* 5 *Moore's Federal Practice* § 23.24[5] (3d ed. 2005) ("The unique-defense inquiry goes to the existence of a defense, not to its validity"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant,

---

plaintiffs' "remaining claims").

since . . . [t]he court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant").

The question presented by the motion to certify was simply: are these defenses present with respect to the Local 710 Funds but not present for the members of the hypothetical class alleged in the complaint?[2] Defendants respectfully submit that, in granting plaintiffs' motion, the Court did not focus on this question and instead prematurely addressed important questions that were not yet before it and were not fully briefed or argued.

A proposed class plaintiff is atypical "where a putative class representative is subject to unique defenses which threaten to become the focus of litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). *Accord Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.").

---

[2] During oral argument on the class certification motion, the Court questioned whether defendants were not, in effect, asking the Court to reach the merits, and counsel for defendants stressed that the Court need not and should not do so in resolving the motion. *See* Transcript of January 31, 2005 Oral Argument ("Tr.") at 47-48 (**Mr. Karlan:** "So on the critical questions on the merits what does Bear Stearns say. One: 'Do you think you were misled by Textron in connection with your purchases of stock during the class period? No.'" **The Court:** "Wait. Wait. That statement or that suggestion asks me to visit the merits." **Mr. Karlan:** "I'm not asking you to do that now, Judge. . . . But we are examining, we must examine whether this proposed class representative is going to be subject to unique defenses at trial."); *id.* at 55 (**Mr. Karlan**: "They will not be able to pursue fraud on the market at trial with this testimony from Bear Stearns." **The Court:** "This sounds like an argument on summary judgment that you're making, not an argument on class certification." **Mr. Karlan:** "Judge, I don't know – I don't believe the plaintiffs are correct – you're certainly going to hear this argument again on the motion for summary judgment. And the question then will be whether the 710 case goes to trial at all. That isn't the question today. The question today is whether 710's claim will be subject to unique defenses at trial that render it atypical of the rest of the class, and, therefore, forbid them from being certified . . .").

We respectfully submit that there will be serious questions about the ability of the Local 710 Funds to sustain their claims, at trial, in part for each of the four reasons set forth above. The Court's discussion of the testimony on each of these defenses makes clear that there is some substantial evidence to support each of them.[3]

In granting the Local 710 Funds' motion, the Court used language that may be read at a later time to imply either that these defenses are insufficient as a matter of law to defeat the Local 710 Funds' claim,[4] or that, while the defenses are legally sufficient, the facts are insufficient to sustain the defenses.[5] Such conclusions were unnecessary on this motion and are

---

[3] *See, e.g.*, Order at 12 (quoting extensively from the deposition testimony of James Gerald McCluskey, Co-Chief Investment Officer of Bear Stearns, concerning Bear Stearns' assumptions and thought processes with respect to the significance and the future of the Osprey program); *id.* at 16-17 (quoting McCluskey's testimony to the effect that Bear Stearns was not misled by Textron); *id.* at 19 n.3 ("McClusky's [sic] testimony could be heard to say: 'We would have bought Textron stock at the same price even if we had all the available information.'"); *id.* at 20 (noting that the Local 710 Funds received $1.86 million during the class period by selling Textron stock at allegedly fraudulently inflated prices).

[4] *See* Order at 10 ("Should the evidence lead a jury to conclude that Plaintiffs were in fact misled, Defendants will find no defense to liability unique to Bear Stearns merely on the basis of its post-Class Period purchases"); *id.* at 16 ("this Court must find Local 710 not subject to a unique defense because Bear Stearns believed Textron stock was undervalued when it bought shares during the Class Period"); *id.* at 13 ("If [Bear Stearns] did not [rely on anything other than publicly available information], then it gets the benefit of a presumption that it was relying on the (mis)information that was absorbed by the market and reflected in the market price").

[5] *See* Order at 14-15 ("[T]his Court concludes that the deposition evidence of McClusky [sic] cited by Defendants does not rebut the presumption of reliance granted Plaintiffs under their fraud-on-the-market theory"); *id.* at 18 ("A failure to be 'shocked' by the September 26 announcement does not take one outside the parameters of the proposed class"); *id.* at 19 n.3 ("It could also be argued that McClusky's [sic] testimony serves as evidence sufficient to rebut the fraud-on-the-market presumption of reliance . . . However, in light of the fact that McClusky [sic] did not have access to all available information when he made his statement, and the fact that his testimony would be subject to at least some credibility attack, this Court will not conclude that McClusky's [sic] statement subjects Local 710 to a unique defense on the reliance element so as to preclude its certification as class representative").

premature. For example, this Court appears to have concluded that defendants will be unable at trial to rebut the presumption of reliance as to the Local 710 Funds.[6] Furthermore, whatever merit there may be in the Court's observation that a "failure to be 'shocked' does not take one outside the parameters of the proposed class" (Order at 18), we respectfully suggest that a willingness to admit that one was not "misled" by the issuer or its executives in the manner alleged in the complaint (or any other way) most assuredly does. The Court all but concludes that at trial this aspect of the Local 710 Funds' purchases will be the subject of intense focus, and that the jury's interpretation of the evidence may well lead it to find for defendants. "[A]t the time of his statement McClusky [sic] was not aware of all the alleged improprieties of Textron and thus his testimony might change once he is made aware of all the relevant facts." Order at 17. This can only mean that, if his testimony does not change, the defendants would be entitled to judgment (or at a minimum that the jury will be entitled to find for defendants). We are not sure what else this Court believes that we must show on this motion to support a conclusion of atypicality based on a unique defense.[7]

Similarly, the Court rejected those cases that hold that purchases of the issuer's stock after the alleged fraud was disclosed creates a unique defense and endorsed those cases holding the contrary. Order at 8-10. None of these cases is from an appellate court, and none is from a district court from within this Circuit. We respectfully suggest that this Court erred in

---

[6] *See*, *e.g.*, Order at 14-15 ("the deposition evidence of McClusky [sic] cited by Defendants does not rebut the presumption of reliance").

[7] There is a similar error at footnote 3 of the Order, where the Court concludes that, because McCluskey's testimony may change, or may be subject to credibility attack, and therefore cannot be the basis at this time for judgment for the defendants, the plaintiff is not atypical. With respect, we suggest that this analysis misses the question posed on an atypicality attack. We need not win summary judgment now to defeat certification of this plaintiff.

concluding that "the critical question is whether a broker's decision to purchase stock at or near its nadir precludes that broker's client from claiming it was the victim of securities fraud as to purchases made on its behalf when the price was at or near its apex." Order at 10. First, while that might be a question on a motion for summary judgment or at trial, the question now is merely whether the defense is potentially viable and whether its existence renders plaintiff atypical of the class it alleges. Second, under any circumstances, we respectfully suggest that this Court misstates the question. The key fact in this case is not merely that the Local 710 Funds bought shares after the end of the class period, but that it bought immediately after the accounting adjustment was announced because, having listened to the analysts' phone conference with Textron management, they concluded (correctly as it turns out) that the market was overreacting to the developments at the end of the third quarter and that the drop in market price of the stock was not warranted. In other words, this is not a case, as the Order suggests, of a defrauded investor attempting to mitigate its losses by averaging down. Nor is it a case of an investor concluding that, now that the price had dropped, the new, low price in fact reflected the actual value of the company. Rather, this is a case where a professional investor concluded that the announcement was irrelevant and that the mass hysteria of crowds had driven the stock price far below its actual value.[8]

* * *

Plaintiffs must not be permitted to move forward in this litigation with a class representative who will be subject to a slew of unique defenses, each of which is substantial standing alone. These unique defenses will **undoubtedly** become a major focus of litigation at

---

[8] As the Supreme Court made clear in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), "those who traded [the disputed] shares after the corrective statements would have no direct or indirect connection with the fraud." *Id.* at 248.

trial, thereby prejudicing the many other class members who would not face substantial questions about unique defenses. The class certification process was designed to prevent this sort of prejudice to other class members by weeding out class representatives such as the Local 710 Funds whose ability to overcome numerous unique defense questions is substantially in doubt.

## CONCLUSION

For all these reasons, defendants respectfully request that this Court reconsider its Order, deny plaintiffs' motion to certify the Local 710 Funds as a Rule 23 class representative, or, at a minimum, clarify its Order to make clear that the merits of the defenses against the Local 710 Funds were not fully presented on plaintiffs' motion to certify and that the Order on plaintiffs' motion should not prejudice the ultimate determination of the merits of the defenses against the Local 710 Funds. In addition, defendants respectfully request that the Court clarify that its recitation of plaintiffs' H-1 and OmniQuip allegations at page 5 of the Order should not be interpreted to undo or contradict the Court's determination in its Decision and Order, dated June 15, 2004, that plaintiffs' H-1 and OmniQuip allegations fail to state a claim.

Dated: Providence, Rhode Island
June 1, 2005

Respectfully submitted,

ADLER POLLOCK & SHEEHAN P.C.

By: ______________________
John A. Tarantino (#2586)
Paul V. Curcio (#1965)

One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June, 2005, I caused a true copy of the within to be served by first-class mail, postage prepaid, to:

*Counsel for Lead Plaintiffs*:

William M. Kolb, Esq.
Kaplan & Kolb Inc.
1100 Turks Head Building
Providence, RI 02903

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

Ira M. Press, Esq.
Kirby, McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, NY 10022

*Co-Counsel for Defendants*:

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

Shelley L. Zimmerman