UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated | : | |
| v. | : | C.A. No. 02-190S |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON | : | |

**DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

For the reasons set forth in the accompanying memorandum of law, Defendants hereby object to Plaintiffs' motion for reconsideration of certain portions of the Court's Memorandum and Order, dated May 10, 2005, that denied Plaintiffs' motion to compel production of documents.

Respectfully submitted,

John A. Tarantino (#2586)
Paul V. Curcio (#1965)
Kristen W. Sherman (#5595)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 751-0604/351-4607
Dated: June 8, 2005

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of June, 2005, I caused a true copy of the within to be served by first-class mail, postage prepaid, to:

*Counsel for Lead Plaintiffs*

William M. Kolb, Esq.
Kaplan & Kolb, Inc.
1100 Turks Head Building
Providence, RI 02903

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

Ira M. Press, Esq.
Kirby, McInerney & Squire, LLP 830
Third Avenue, 10th Floor
New York, NY 10022

*Co-Counsel for Defendants:*

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

335375_1.DOC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated | : | |
| v. | : | C.A. No. 02-190S |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

Defendants respectfully submit this memorandum of law in opposition to Plaintiffs' motion for reconsideration of those portions of the Court's Memorandum and Order, dated May 10, 2005 ("Order"), that denied Plaintiffs' motion to compel production of documents relating to the falsification of maintenance data by Marine personnel and Bell Helicopter's Earned Value Management System.

## I. The Court Properly Rejected Plaintiffs' Demand For Documents Relating To The Falsification Of Maintenance Data By Marine Personnel

The Court properly rejected Plaintiffs' demand for documents relating to the falsification of maintenance data by Marine personnel because Plaintiffs failed to satisfy their burden under Rule 26(b)(1): "Plaintiffs have not, however, made a convincing showing as to the relevance of such documents concerning the so-called 'falsification scandal' since there is no allegation that it involved Defendants, or any Textron employees for that matter." Order at 9-10.[1]

Indeed, in their motion to compel, Plaintiffs failed to make any attempt to explain how

[1] See Surles v. Air France, 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001) ("Air France's contention that Surles bears the burden of establishing a basis for resisting its discovery is flat wrong . . . under the recent amendments to the Federal Rules of Civil Procedure.").

documents relating to the Marine falsification scandal were relevant to their remaining claim. Instead, as if nothing more were required, Plaintiffs stated only that "Plaintiffs also request 'all documents concerning inquiries, allegations or investigations regarding the alteration or falsification of V-22 Program records." Plaintiffs' Motion to Compel Production of Documents ("Ps' Production Motion"), dated March 15, 2005, at 22.

In their opposition to Plaintiffs' motion to compel, Defendants noted the conspicuous absence of any attempt by Plaintiffs to establish the relevance of the documents:

> Moreover, while plaintiffs demand "all documents concerning inquiries, allegations or investigations regarding the alteration or falsification of V-22 Program records" (Ps' Production Motion, at 22), plaintiffs fail to offer any explanation how the falsification of maintenance data by Marine personnel has any bearing on their remaining V-22 claim. Indeed, plaintiffs cannot even link the Marine falsification scandal to "the impact the delays in reaching full-rate production had on Textron's accounting" *(Rosen,* 321 F. Supp. 2d at 324), because "the falsification of maintenance data and readiness records [by Marine personnel] was *limited to the period of December 20, 2000 to January 11, 2001"* (12/11/01 Inspector General Report, at 1 (DA Ex 27)), or *after* full-rate production already had been "indefinitely" postponed. Am. Comp. ¶ 89.

Defendants' Opposition to Plaintiffs' Motion to Compel, dated April 4, 2005, at 30 n.10.

At oral argument, Defendants' counsel reiterated that "the amended complaint alleges that the decision on going to a full rate production contract had already been indefinitely postponed . . . before the period of time when the alleged falsification of records occurred." Transcript of April 15, 2005 Oral Argument ("4/15/05 Tr."), at 44.

Though provided ample opportunity to do so, Plaintiffs' counsel did not dispute that there was a lack of any nexus between the Marine falsification scandal and the decision on full-rate production. *See id.* at 47-48.

At oral argument, Defendants' counsel also stated that "none of the Marine officials who are alleged to have falsified records worked for ***Textron"*** and that "there was no allegation in

either the complaint or in the official government reports concerning this scandal that suggested ***Textron*** knew about this, asked that it happened or benefited in any way up front [sic] from it happening." *Id.* at 44 (emphasis added).

In an improper attempt to conflate Textron and Bell Helicopter,[2] the only response of Plaintiffs' counsel was that "we did make the allegation of a link between that ***Bell*** did in fact know about the falsifications." *Id.* at 47 (emphasis added).

In their motion for reconsideration, Plaintiffs have regurgitated the same argument that was advanced at oral argument and rejected by this Court: "paintiffs did make specific allegations with respect to ***Bell*** employees' participation in the falsification scandal." Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration, dated May 24, 2005, at 3 ("Ps' Br.") (emphasis added).

Plaintiffs' motion should be denied. As Plaintiffs' own purported authority makes clear, "a motion for reconsideration cannot be used as a vehicle to relitigate and/or rehash matters already litigated and decided by the Court." *Villanueva-Mendez v. Nieves Vasquez,* 360 F. Supp. 2d 320, 322 (D.P.R. 2005) (Ps' Br. at 2). Yet, that is precisely what Plaintiffs are attempting to do here. *Compare* Ps' Br. at 3-4, *with* 4/15/05 Tr. at 47.[2]

Moreover, the Court's holding that "there is no allegation that [the Marine falsification scandal] involved Defendants, or any Textron employees for that matter" (Order at 9-10), is entirely accurate. *See Villanueva-Mendez,* 360 F. Supp. 2d at 323 (denying motion for reconsideration because plaintiff failed to establish any "manifest errors of law or fact" by the Court). Indeed, not one of the allegations identified by Plaintiffs in their motion for reconsideration concerns Textron or Messrs. Campbell, Janitz or French, the current and former

[2] Helicopter is "a separately incorporated subsidiary of Textron." *Rosen v. Textron, Inc.,* 321 F. Supp. 2d 308, 327 (D.R.I. 2004).

Textron officers who are named as defendants. *See* Ps' Br. at 4-5.

Plaintiffs' assertion that "it has been clearly alleged that defendants/Textron employees were involved" (Ps' Br. at 6), is demonstrably false and mischaracterizes the allegations concerning Bell employees as allegations concerning Textron employees. *See Albert Fadem Trust v. American Elec. Power Co., Inc.,* 334 F. Supp. 2d 985, 1028 (S.D. Ohio 2004) (rejecting securities fraud allegations that "equate acts by a subsidiary and its employees to acts by the parent company itself"). Even accepting *arguendo* Plaintiffs' assertion that two unidentified Bell employees were *"potential* witnesses to the misconduct of the Marines" (Ps' Br. at 4), Plaintiffs' Amended Complaint is devoid of any allegation that any Textron employee, much less any of the Textron defendants, was advised of anything that the two unidentified Bell employees allegedly "potentially" witnessed.[3]

Furthermore, Plaintiffs fail to offer any concrete explanation as to how the alleged falsification of maintenance data by the Marines had any bearing on Textron's accounting for the V-22. As courts have long made clear, "the standard of relevancy . . . is not so liberal as to allow a party to *roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Beneficial Fin. Co. v. Fontaine,* 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) (emphasis added).

[3] Plaintiffs' Amended Complaint also is devoid of any allegation that any of the Textron defendants was advised of anything that former Bell President John Murphey might have learned from an e-mail exchange in November 2000 on which Murphey allegedly was copied. Moreover, Plaintiffs' assertion that the e-mail exchange somehow implicates Murphey is belied by the December 2001 Inspector General Report upon which they purport to rely. As set forth in the Inspector General Report, the November 2000 e-mail exchange did *not* involve any of the Marine Corps personnel who were determined to have participated in the falsification scheme. *See* 12/11/01 Inspector General Report at C-1, C-2 (Exhibit 1 to Defendants' Appendix, dated June 8, 2005). It thus defies the imagination for Plaintiffs to claim that the November 2000 e-mail exchange shows that Murphey was somehow aware of the falsification scheme.

## II. The Court Properly Rejected Plaintiffs' Demand For Documents Relating To Bell's EVMS System

Plaintiffs' demand for documents relating to Bell Helicopter's Earned Value Management System ("EVMS") also should be rejected. As this Court correctly held, "rather than focusing on what Defendants knew and when, this Request focuses more on how they knew it and/or what they did not know." Order at 10.

In their motion to compel, Plaintiffs represented that their claim was that "defendants had access to accurate cost information about the Osprey contracts, which was nevertheless ignored." Ps' Production Motion at 18.

In their opposition, Defendants explained why Plaintiffs' motion only confirmed that their document demand was far removed from the claim in this case:

> There is no allegation that defendants fraudulently manipulated any system to produce inaccurate cost data. To the contrary, as plaintiffs make abundantly clear, plaintiffs' claim is that "defendants had access to *accurate* cost information about the Osprey contracts, which was nevertheless ignored." Ps' Production Motion, at 18 (emphasis added). Defendants already have produced to plaintiffs documents reflecting the costs associated with the V-22 that plaintiffs claim was "ignored."

Defendants' Opposition to Plaintiffs' Motion to Compel, dated April 4, 2005, at 23.

In their motion for reconsideration, Plaintiffs make no attempt to demonstrate how documents relating to Bell's EVMS system are relevant to their claim that "defendants had access to accurate cost information about the Osprey contracts, which was nevertheless ignored." Ps' Production Motion at 18. Instead, Plaintiffs speculate that the documents may "show that defendants intentionally or recklessly failed to monitor costs or schedules." Ps' Br. at 8.

Plaintiffs' motion should be denied. Once again, Plaintiffs' motion improperly regurgitates arguments that were advanced at oral argument and rejected by this Court. *Compare, e.g.,* Ps' Br. at 7 ("the government had grave concerns about defendants' EVMS

system during the class period"), *with* 4/15/05 Tr. at 51 ("the government had serious problems with their system"). As Plaintiffs' own authority confirms, "a motion for reconsideration cannot be used as a vehicle to relitigate and/or rehash matters already litigated and decided by the Court." *Villanueva-Mendez,* 360 F. Supp. 2d at 322 (Ps' Br. at 2).

Moreover, there is no allegation that Textron or any of the current and former Textron officers named as defendants fraudulently manipulated Bell's EVMS system to produce inaccurate cost data. Nor is there any allegation that the Textron defendants played any role in Bell's EVMS system[4] or that the Textron defendants were apprised of problems with Bell's EVMS system, but chose to ignore it. Thus, there is no basis for Plaintiffs' contention that documents relating to Bell's EVMS system could "show that [the Textron] defendants intentionally or recklessly failed to monitor costs and schedules." Ps' Br. at 8. As courts have made clear, "intentional misconduct or recklessness cannot be presumed from a parent's reliance on its subsidiary's internal controls." *American Elec. Power,* 334 F. Supp. 2d at 1011-17. Indeed, as Plaintiffs' own purported authority confirms, even "the failure of a parent company to interpret extraordinarily positive performance by its subsidiary . . . as a sign of problems and thus to investigate further does not amount to recklessness under the securities laws." *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000) (Ps' Br. at 8).

Plaintiffs' ever-evolving theories concerning "whatever the evidence about the EVMS system may show" (Ps' Br. at 8), only illustrate that Plaintiffs are engaged in an improper fishing expedition. Plaintiffs' motion should be denied. *See Fontaine,* 402 F. Supp. at 1221 (denying discovery "to explore matter which does not presently appear germane on the theory that it might

[4] In yet another improper attempt to conflate Textron and Bell Helicopter, Plaintiffs refer to Bell's <u>EVMS</u> system as a "Textron cost and schedule monitoring system." Ps' Br. at 7. As Plaintiffs' own exhibits confirm, the EVMS system was a Bell Helicopter system, not a Textron system. *See* Exhibit D to Plaintiffs' Appendix of Exhibits, dated May 24, 2005.

conceivably become so").

## CONCLUSION

For all these reasons, defendants respectfully request that this Court deny Plaintiffs' motion for reconsideration.

Respectfully submitted,

John A. Tarantino (#2586)
Paul V. Curcio (#1965)
Kristen W. Sherman (#5595)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 751-0604/351-4607
Dated: June 8, 2005

GIBSON, DUNN & CRUTCHER
LLP Mitchell A. Karlan (Pro Hac
Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2005, I caused a true copy of the within to be served by first-class mail, postage prepaid, to:

*Counsel for Lead Plaintiffs*

William M. Kolb, Esq.
Kaplan & Kolb, Inc.
1100 Turks Head Building
Providence, RI 02903

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

Ira M. Press, Esq.
Kirby, McInerney & Squire, LLP 830
Third Avenue, 10th Floor
New York, NY 10022

*Co-Counsel for Defendants:*

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

April M Fontaine

335369_1.DOC