UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S |
| LESLIE TURBOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

**PLAINTIFFS' APPEAL OF JULY 20, 2005 ORDERS AND MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 72(a), plaintiffs hereby object to and appeal portions of two of Magistrate Judge Almond's Memoranda and Orders, filed July 20, 2005.[1] On May 10, 2005, Judge Almond entered a Memorandum and Order granting in part and denying in part plaintiffs' motions to compel the production of various sets of documents from Textron (docket no. 104, attached as Ex. A). Plaintiffs sought reconsideration of a portion of the May 10 Order. Plaintiffs' motion for reconsideration was denied in an Order issued July 20, 2005 (docket no. 134; attached as Ex. B). Also on July 20, 2005, Magistrate Judge Almond granted with modification plaintiffs' motion for the entry of a protective order under the Privacy Act of 1978, 5 U.S.C. §552a. (The second July 20 Order, docket no. 135, is attached as Ex. C.) Plaintiffs believe that both Orders are erroneous, as the first Order and the modifications made in the second Order arise in part from a misapprehension on the part of the Magistrate Judge concerning the "falsification scheme" with respect to the V-22 Osprey aircraft program ("V-22 program"). The Magistrate denied plaintiffs' request for documents concerning the government investigation of the falsification scheme, based on defendants' argument that no involvement in the scheme was alleged in plaintiffs' Corrected Amended Complaint ("Complaint" or "Cmplt.") In fact, however, the Complaint makes detailed allegations concerning Textron's involvement; therefore, the document request should be granted. The bases for plaintiffs' appeal are set forth herein. In accordance with Local Rule 12(a)(1), plaintiffs are not filing a separate memorandum of law, but state as follows in support of their appeal:

---

[1] The Orders appealed were entered July 20, 2005. For time periods less than eleven days, intermediate Saturdays, Sundays, and holidays are not counted. Fed. R. Civ. P. 6. Appeals from Magistrate Orders must be taken ten days after such a ruling is served on the appellant. LR 72(c)(1). Therefore, ten days from the Order's entry would be August 3, 2005.

## II. BACKGROUND

Plaintiffs' primary allegation is that, during the class period, Textron countered consistent bad news about its V-22 program – crashes, unfavorable government investigations, and the like – with deceptively upbeat financial statements. Textron's Bell Helicopter subsidiary develops and manufactures the V-22. Earnings and revenues were inflated because Textron concealed the accounting impact of ongoing problems with the V-22 program, in violation of Generally Accepted Accounting Principles ("GAAP") and securities laws. Consequently, the market was taken by surprise when Textron belatedly announced a 25-cent-per-share loss based on problems with the V-22 and other helicopter programs on September 26, 2001. The stock price dropped nearly 25%, leading to heavy losses by the named plaintiffs and the class.

On June 15, 2004, this Court denied Textron's motion to dismiss plaintiffs' claims regarding the V-22 program. *Rosen v. Textron*, 321 F. Supp. 2d 308, 323 (D.R.I. 2004). Specifically, this Court noted that:

> Plaintiffs allege that Textron and the Individual Defendants had detailed knowledge of the state of the Osprey program and the company's need to adjust its profit estimates to conform to GAAP in October 2000, but purposely delayed making the adjustment. It is reasonable to infer from the allegations that the Defendants knew they should have accounted for the losses associated with the V-22 contract in Textron's financial statements as early as October 2000.

*Id.*

### A. Plaintiffs Allege Textron Employees' Role in the V-22 Maintenance Record Falsification Scheme

Throughout the Complaint, plaintiffs detail numerous occasions during the class period when Textron officials knew of problems with the V-22 program that were not disclosed publicly. Plaintiffs specifically allege that Textron employees, including John Murphey (then president of Textron's Bell unit) had knowledge of what has been referred to

throughout the case as "the falsification scheme" – where Marines in charge of V-22 maintenance were ordered to describe V-22 helicopters that were unable to fly ("down" in military jargon) as able to fly (or "up"):

> 100. Significantly, the report of the falsification scandal issued by the Office of the Inspector General also revealed that at least two employees from Bell (whose names were redacted from the version publicly released) were present at meetings in which the falsification of data was discussed. Thus, they were potential "witnesses" to the misconduct of the Marines, according to the report. As the report stated, referring to the Maintenance Action Forms ("MAFs") completed by the Marines when an aircraft was unable to fly ("Down") as opposed to able to fly ("Up"):
>
> > Bell Employee-Airframe Section, VMMT-204
> > MCAS New River, NC
> >
> > [Redacted name of Bell employee] can testify to attending a meeting on December 19, 2000, where Capt. Ramsey gave instructions that no more "downing" MAFs were to be written. After the meeting, [redacted] and other members of the airframe section discussed implementing a process to ensure there was no confusion regarding the aircraft's status.
> >
> > * * *
> >
> > Bell, Airframe Section, VMMT-204
> > MCAS New River, NC
> >
> > [Redacted name of Bell employee] can testify to attending a meeting on December 19, 2000, with Capt. Ramsey where Capt. Ramsey instructed attendees to write "down" MAFs as "up" MAFs. [Redacted] believed he wrote 40 to 50 MAFs in this manner following Capt. Ransey's guidance, which affected aircraft #06, #07 and #09.
>
> 101. The Inspector General report was issued after the Class Period, on December 11, 2001. It is publicly available and is incorporated herein by reference.
>
> 102. This onslaught of bad news about the V-22 – the Coyle and GAO reports to the Blue Ribbon Panel and the revelation of the "mission capable rate" falsification scandal – predictably led to a decline in the price of Textron stock, which dropped to $45.93 by January 22, 2001. Nevertheless, on the day following this low, January 23, 2001, defendants announced the Company's financial results for the fourth quarter of 2000. These results, which were materially false and misleading for the reasons set forth below,

> propped the price of Textron stock back up and, in fact, launched it on a conspicuous uptrend lasting several months.

(Cmplt., ¶¶100-102) In addition to alleging the participation of these employees (whose names were redacted), plaintiffs also specifically allege the involvement of Bell's president, John Murphey, in the falsification scheme:

> 219. <u>Textron's Advance Knowledge of the Reporting of False Mission-Capable Rates</u>.
> (a) As indicated above, on January 31, 2001, 60 Minutes reported that it had obtained an email sent from Brigadier General James Amos to Lt. General Fred McCorkle, Deputy Commandant of Marine aviation. In that email, dated November 21, 2000, Gen. Amos alerted Gen. McCorkle to the Osprey's actual dismal "mission capable" rates. The e-mail described the rates as a "bad story" that could jeopardize the decision to go to full-rate production. He said that the information should be "close-held." In the email, Gen. Amos reported the Osprey's mission capable rate during the first part of November was 26.7 percent, which meant that only one in four aircraft were then able to fly.
>
> (b) Significantly, the e-mail and the replies that followed each contained the address of John Murphey, then president of Textron's Bell division, as the recipient of a copy.
>
> (c) Just nine days after this e-mail exchange, however, Gen. Amos falsely reported different and much more favorable mission-capable rates at a Pentagon press conference.
>
> (d) Murphey, then-president of Textron's Bell division, thus knew or recklessly disregarded that the V-22's actual mission-capable rates were far worse than was being publicly reported by Gen. Amos. This knowledge is imputed from Murphey, a member of top management, to Textron. At the time, Defendants were highly motivated to conceal this negative information concerning the V-22 to avoid cancellation of the program and the loss of revenue and earnings that would ensue. At the time, in light of the heightened public scrutiny of the program, there was an increased probability that the V-22 program would be canceled. As a result, defendants were highly motivated to downplay such negative information by not acknowledging its accounting impact.
>
> (e) Thus, Bell President Murphey knew and participated in the scheme to falsify the Osprey's maintenance records, and to falsely present those records to government procurement officials and the public. Yet, rather than censure Murphey for his role, Textron promoted him.

(Cmplt., ¶219)

**B. Textron Misstated Plaintiffs' Allegations to the Magistrate, Who Adopted the Misstatement in Error**

To obtain relevant documents concerning the falsification scandal alleged in the Complaint, plaintiffs served a request upon Textron seeking "[a]ll documents concerning inquiries, allegations, or investigations regarding the alteration or falsification of V-22 program records" ("Request 20"). Objecting to Request 20 on, among other reasons, relevance grounds, Textron refused to produce any responsive documents. At oral argument before the Magistrate on plaintiffs' motion to compel, Textron's counsel falsely recast the falsification scheme as completely internal to the military – that it did not touch upon Textron at all. Textron's counsel told the Magistrate:

> There was no allegation in either the complaint or in the official government reports concerning this scandal that suggested that Textron knew about this, asked that it happened, or benefited in any way up front from it happening. ***There's simply no allegation of that either in the complaint or in the government's reports on the scandal.***

Transcript of April 15, 2005 Oral Argument, attached as Ex. D, at 44 (emphasis provided).

As indicated from paragraphs 100-102 and 219 of the Complaint set forth above, defendants' statement is demonstrably false. Plaintiffs ***have*** alleged that Textron officials knew about the falsification scheme, and explain why it is relevant to their claims ***in the Complaint.***[2]

The Magistrate recognized the relevance of government investigations and documents relating thereto to plaintiffs' claims in a general sense in the May 10 Order. (Ex. A, at 8) He granted plaintiffs' motion to compel the production of documents from Textron pursuant to a ***broader*** discovery request seeking documents concerning governmental investigations or audits relating to the V-22, noting that "[p]laintiffs argue convincingly that internal documents evidencing Defendants' reaction to, or awareness of, such Government

[2] Plaintiffs' counsel tried to correct the record during the oral argument. (*See* Ex. D, at 47)

findings are relevant." (*Id.*) The Magistrate's granting of the broader request echoes this Court's own discussion of the importance of Department of Defense investigations and their relationship to plaintiffs' claims, as discussed in the Order denying Textron's motion to dismiss. *Rosen*, 321 F. Supp. 2d at 313-14.

However, the Magistrate specifically denied plaintiffs' motion to compel Request 20, noting that "plaintiffs have not ... made a convincing showing as to the relevance of such documents concerning the so-called 'falsification scandal' since there is no allegation that it involved Defendants, or Textron employees for that matter." (Order, Ex. A, at 9) As indicated above, this is demonstrably incorrect; the Magistrate unfortunately echoed Textron's false "spin" on plaintiffs' allegations. Plaintiffs attempted to bring this error to the Magistrate's attention via a timely-filed motion for reconsideration, outlining the disparities between plaintiffs' allegations as set forth in the Magistrate's Order and those same allegations as actually set forth in the Complaint. However, the Magistrate effectively struck plaintiffs' motion, stating it did not meet the standards for a motion for reconsideration. (Ex. B at 2) The Magistrate then stated that "[i]f Plaintiffs object to this Court's prior Order as to Request No. 20, they may exercise their right to appeal it to Judge Smith." (Ex. B at 2, *citing* 28 U.S.C. ' 636(b)(1)(A)) Wherefore, plaintiffs file this appeal.

## III. ARGUMENT

### A. Plaintiffs Are Entitled To Material Concerning the Falsification Scheme

Plaintiffs appeal the Magistrate's July 20, 2005, Order, relating back to the May 10, 2005, Order, on the grounds that it is clearly erroneous. Contrary to the assertions of Textron's counsel and the Magistrate, plaintiffs have plainly pled that the falsification scandal involved Textron employees, and was well known by Textron management. (*See* Am. Cmplt., ¶¶100-02, 219, as quoted above.) For the same reasons that the Magistrate granted a

*broader* request seeking documents concerning governmental investigations, plaintiffs are entitled to discovery concerning the falsification scheme.

As this Court noted in its Order denying Textron's motion to dismiss claims concerning the V-22, plaintiffs' allegations concern (1) when Textron knew about problems with the V-22, and (2) when they should have taken the charge plaintiffs allege was artificially delayed until September 2001. *Rosen*, 321 F. Supp. 2d at 323. The knowledge and/or participation of Textron employees in the falsification scandal, as alleged in the Complaint, are certainly relevant to these core allegations. Plaintiffs believe that Magistrate Almond's July 20, 2005, denial of plaintiffs' motion to reconsider was in error, and that the May 10, 2005, Order should be amended to grant plaintiffs' motion to compel Textron to produce all responsive documents concerning inquiries, allegations, or investigations regarding the alteration or falsification of V-22 Program records.

## B. Magistrate Almond Improperly Circumscribed Plaintiffs' Request for a Privacy Act Protective Order

The Magistrate's erroneous stance with respect to the falsification scheme necessitates an appeal of his second July 20, 2005 Order. On June 17, 2005, Plaintiffs moved for a Privacy Act Protective Order allowing the production of unredacted documents for "all documents concerning investigations, inquiries, or audits concerning the 'V-22' Osprey program, Textron, Inc., or Textron's Bell Helicopter subsidiary." Plaintiffs made two requests to the Department of Defense for this material; one in a "Touhy" request to the Defense Criminal Investigative Service dated September 21, 2004, (attached as Ex. E)[3]

[3] In accordance with Department of Defense ("DoD") Regulations (32 CFR Part 97), plaintiffs made a request to the DoD Inspector General for all documents concerning investigations, inquiries, or audits concerning the V-22 "Osprey" program, Textron, Inc., or Textron's Bell Helicopter subsidiary. Pursuant to subsequent discussions, this request was narrowed to materials concerning the V-22 Osprey program. Plaintiffs' initial "Touhy" request was not done by subpoena, at the DoD's request. The DoD is in the process of preparing the requested documents for release; however, DoD recently requested that the plaintiffs obtain a protective order under the Privacy Act, so that the documents could be produced without redaction. Without a protective

and a second in a subpoena to another branch of the Department of Defense dated March 28, 2005 (attached as Ex. F). The proposed order attached to plaintiffs' motion asked for a protective order governing and directing "the disclosure in the course of this action of all Department of Defense official information and documents which are either protected by the Privacy Act or which contain personal information regarding nonparty individuals, and which are reasonably necessary or useful to respond to the plaintiffs' subpoena and 'Touhy' request."

Through an oversight, plaintiffs did not attach either the subpoena or the "Touhy" request to their Motion. Plaintiffs' Motion, however, precisely tracked the language of the "Touhy" request, which was contained in a letter to Mark Boyll, Office of the General Counsel (Ex. E).

The Court's Order (Ex. C) granted plaintiffs' request for a Privacy Act Protective Order with respect to all document requests, but limited the documents to those contained in the subpoena rider and restricted this production to documents relating to the time period of January 1, 2000, through September 30, 2001. The Order noted that "the Court is unable to evaluate whether [the September 21, 2004, 'Touhy' request] is appropriately tailored to the parameters of discovery in this case." (Ex. C at 3)

Plaintiffs are seeking a modification of its July 20, 2005, Order to encompass the materials sought in the "Touhy" request. Plaintiffs are amenable to the time frame indicated by the Magistrate. However, plaintiffs are seeking to clarify that documents may have been created after September 30, 2001, which nevertheless relate to the relevant time period. As

---

order, the Privacy Act requires DoD officials to pre-screen each document for Privacy Act objections and requires them to present those objections to the Court for a decision regarding disclosure. Counsel for the DoD Inspector General has apprised plaintiffs' counsel that approximately 1000 pages of documents are ready to be produced within thirty days of the issuance of an appropriate protective order. Failure to obtain an appropriate Privacy Act Protective Order will further delay the process for the time it takes to redact the documents.

indicated in the "Touhy" request, plaintiffs' Complaint contains numerous references to Defense Criminal Investigative Service ("DCIS") investigations and audits concerning the relevant events and time period, but which were created after that time, including the DCIS report issued on December 11, 2001, and on the DCIS report issued on June 24, 2002. (*See* Cmplt. at ¶¶69, 71, 72, 74, 76, 101, and 220.)

Plaintiffs have elected to appeal the Magistrate's Order rather than seek reconsideration, however, because many of the materials covered by the "Touhy" request relate to the falsification scheme, an area of inquiry to which, as noted above, plaintiffs believe the Magistrate has improperly denied them access. ***All*** the materials requested in the Touhy request (Ex. E) as well as the subpoena (Ex. F) relate to plaintiffs' claims and are therefore relevant under the Federal Rules of Civil Procedure.[4] Therefore, plaintiffs respectfully request that this Court enter a Privacy Act Protective Order encompassing all materials requested in both the "Touhy" request (Ex. E) and the subpoena (Ex. F). Plaintiffs have attached a draft Protective Order reflective of the actions requested in this appeal as Ex. G.[5]

## IV. CONCLUSION

For the reasons cited above, Plaintiffs object to portions of the Magistrate's July 20, 2005, Memoranda and Orders. Plaintiffs request that this Court:

- Grant plaintiffs' request for reconsideration, and therefore modify the Magistrate's May 10, 2005, Order and grant plaintiffs' motion to compel Document Request No.

---

[4] At the very least, Plaintiffs specifically request that the Protective Order's scope be expanded to cover the June 29, 2001 Investigation Report filed by the Inspector General and related documents, which was included in the Joint Appendix at Exhibit 40. (Documents in the Joint Appendix were relied upon by the Court in denying Textron's Motion to Dismiss). This report figures prominently in plaintiffs' allegations, as indicated in Paragraphs 100-101 of the Complaint, cited above.

[5] Plaintiffs attached a draft protective order to their original Motion; however, because the Magistrate altered the scope, he requested that plaintiffs produce a new draft protective order reflective of the second July 20, 2005 Order (Ex. F at 4); this was filed August 3, 2005.

20, requesting all documents concerning inquiries, allegations, or investigations regarding the alteration or falsification of V-22 Program records.

- Modify the Magistrate's July 20, 2005, Order granting Plaintiffs' motion for a Privacy Act protective order by expanding its scope to all Department of Defense official information and documents which are either protected by the Privacy Act or which contain personal information regarding nonparty individuals, and which are reasonably necessary or useful to respond to the plaintiffs' subpoena and 'Touhy' request, either by entering its own protective order or by adopting the proposed protective order attached as Ex. G.

Respectfully submitted,

By: [signature]

William M. Kolb, Esq.
Law Offices of William M. Kolb, LLC
1 Ship Street
Providence, RI 02903
Tel: (401) 490-8297
Fax: (401) 490-8299

Dated: August 3, 2005

Plaintiffs' Liaison Counsel

Michael I. Behn, Esq.
Ronald L. Futterman, Esq.
FUTTERMAN & HOWARD, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, IL 60603
Tel: (312) 427-3600

Ira M. Press, Esq.
Mark A. Strauss, Esq.
KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue
New York, NY 10022
Tel: (212) 371-6600

Plaintiffs' Co-Lead Counsel

Kirk Chapman
MILBERG WEISS BERSHAD HYNES
& LERACH LLP
One Pennsylvania Plaza
49th Floor
New York, NY 10019
Tel: (212) 594-5300

Certificate of Service

I hereby certify that on the 3rd day of August, 2005, a true and accurate copy of Plaintiffs' Appeal of July 20, 2005 Orders and Memorandum in Support was served by first class mail, postage prepaid, upon the following:

John A. Tarantino, Esq.
Paul V. Curcio, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

William M. Kolb