UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated, | : | |
| Plaintiffs, | : | C.A. 02-190S |
| v. | : | |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ and THEODORE R. FRENCH, | : | |
| Defendants. | : | |

**DEFENDANTS' OBJECTION TO PLAINTIFFS' APPEAL OF**
**MAGISTRATE JUDGE ALMOND'S JULY 20, 2005 ORDERS**

For the reasons set forth in the accompanying memorandum of law, defendants hereby object to plaintiffs' appeal of Magistrate Judge Almond's July 20, 2005 Orders.

Dated: Providence, Rhode Island
August 17, 2005

Respectfully submitted,

ADLER POLLOCK & SHEEHAN P.C.

By: [signature]
John A. Tarantino (#2586)
Paul V. Curcio (#1965)

One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of August, 2005, I caused a true copy of the foregoing Objection, accompanying Memorandum of Law and accompanying Appendix of Exhibits to be served by first-class mail, postage prepaid, to:

*Counsel for Lead Plaintiffs*:

William M. Kolb, Esq.
Law Offices of William M. Kolb, LLC
One Ship Street
Providence, RI 02903

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

Ira M. Press, Esq.
Kirby, McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, NY 10022

*Co-Counsel for Defendants*:

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

Angela L. Conneally

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ and THEODORE R. FRENCH,<br><br>Defendants. | : | C.A. 02-190S |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' APPEAL OF MAGISTRATE JUDGE ALMOND'S JULY 20, 2005 ORDERS**

ADLER POLLOCK & SHEEHAN P.C.
John A. Tarantino (#2586)
Paul V. Curcio (#1956)
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

August 17, 2005

Defendants Textron Inc., Lewis B. Campbell, John A. Janitz and Theodore R. French respectfully submit this memorandum of law in opposition to plaintiffs' appeal of Magistrate Judge Almond's July 20, 2005 orders on plaintiffs' motion for reconsideration and plaintiffs' motion for entry of Privacy Act protective order.

## INTRODUCTION

Having failed twice already to obtain production of documents relating to the falsification of maintenance data by Marine personnel, plaintiffs have regurgitated for the *third* time the same arguments that were advanced to, and rejected by, Magistrate Judge Almond. Like Magistrate Judge Almond, this Court should reject plaintiffs' spurious arguments and affirm Magistrate Judge Almond's July 20, 2005 orders.

## ARGUMENT

As this Court has made clear, "the Magistrate Judge's rulings here only can be overturned . . . where they are clearly erroneous or contrary to law." *Rosen v. Textron*, C.A. No. 02-190S (D.R.I. July 11, 2005) (affirming Magistrate Judge Almond's rulings). Plaintiffs have failed to demonstrate that Magistrate Judge Almond's July 20, 2005 orders are "clearly erroneous" or "contrary to law." Plaintiffs' appeal therefore should be denied.

### I. Magistrate Judge Almond Properly Rejected Plaintiffs' Demand For Documents Relating To The Falsification Of Maintenance Data By Marine Personnel

On May 10, 2005, Magistrate Judge Almond properly rejected plaintiffs' demand for documents relating to the falsification of maintenance data by Marine personnel because plaintiffs failed to satisfy their burden under Rule 26(b)(1) of the Federal Rules of Civil Procedure: "Plaintiffs have not, however, made a convincing showing as to the relevance of such

documents concerning the so-called 'falsification scandal' since there is no allegation that it involved Defendants, or any Textron employees for that matter." May 10 Order at 8-9 (Plaintiffs' Appendix of Exhibits, served on August 9, 2005 ("PA"), Exhibit A).[1]

Indeed, in their motion to compel, plaintiffs failed to make any attempt to explain how documents relating to the Marine falsification scandal were relevant to their remaining claim. Instead, as if nothing more were required, plaintiffs stated only that "plaintiffs also request 'all documents concerning inquiries, allegations or investigations regarding the alteration or falsification of V-22 Program records.'" Plaintiffs' Motion to Compel, dated March 15, 2005, at 22 (Docket No. 76).

In their opposition to plaintiffs' motion to compel, defendants noted the conspicuous absence of any attempt by plaintiffs to establish the relevance of the documents:

> Moreover, while plaintiffs demand "all documents concerning inquiries, allegations or investigations regarding the alteration or falsification of V-22 Program records" (Ps' Production Motion, at 22), plaintiffs fail to offer any explanation how the falsification of maintenance data by Marine personnel has any bearing on their remaining V-22 claim. Indeed, plaintiffs cannot even link the Marine falsification scandal to "the impact the delays in reaching full-rate production had on Textron's accounting" (*Rosen*, 321 F. Supp. 2d at 324), because "the falsification of maintenance data and readiness records [by Marine personnel] was *limited to the period of December 20, 2000 to January 11, 2001*" (12/11/01 Inspector General Report, at 1 (DA Ex 27)), or *after* full-rate production already had been "indefinitely" postponed. Am. Comp. ¶ 89.

Defendants' Opp'n to Motion to Compel, dated April 4, 2005, at 30 n.10 (Docket No. 84-85).

At oral argument, defendants' counsel reiterated that "the amended complaint alleges that the decision on going to a full rate production contract had already been indefinitely postponed

---

1 Plaintiffs have included defendants' counsel on the cover page of their Appendix of Exhibits giving the misimpression that it was a joint appendix. It was not and, as discussed in Point II.C. below, includes a document (PA Ex. E) that plaintiffs refused to provide to defendants. Moreover, though plaintiffs filed their appeal on August 3, plaintiffs waited until nearly a week later on August 9 to send out, by mail, a copy of their Appendix of Exhibits to defendants. *See* Plaintiffs' Certificate of Service, dated August 9, 2005, at end of Appendix of Exhibits.

. . . before the period of time when the alleged falsification of records occurred." Transcript of April 15, 2005 Oral Argument ("Oral Argument Tr."), at 44 (PA Ex. D).

Though provided ample opportunity to do so at oral argument, plaintiffs' counsel did not dispute that there was a lack of any nexus between the Marine falsification scandal and the decision on full-rate production. *See id.* at 47-48. In their appeal, plaintiffs again do not dispute that there is a lack of any nexus between the Marine falsification scandal and the decision on full-rate production. *See* Plaintiffs' Memorandum in Support of Appeal of July 20, 2005 Orders, dated August 3, 2005 ("Ps' Appeal Br."), at 1-10.

At oral argument, defendants' counsel also accurately stated that "none of the Marine officials who are alleged to have falsified records worked for ***Textron***" and that "there was no allegation in either the complaint or in the official government reports concerning this scandal that suggested ***Textron*** knew about this, asked that it happened or benefited in any way up front [sic] from it happening." Oral Argument Tr. at 44 (emphasis added) (PA Ex. D).

In an improper attempt to conflate Textron and Bell Helicopter,[2] the only response of plaintiffs' counsel was that "we did make the allegation of a link between that ***Bell*** did in fact know about the falsifications." *Id.* at 47 (emphasis added).

In their motion for reconsideration, plaintiffs regurgitated the same argument that was advanced at oral argument and rejected by Magistrate Judge Almond: "plaintiffs did make specific allegations with respect to ***Bell*** employees' participation in the falsification scandal." Plaintiffs' Brief in Support of Motion for Reconsideration, dated May 24, 2005 at 3 (emphasis added) (Exhibit 1 to Defendants' Appendix of Exhibits, dated August 17, 2005 ("DA")).

---

2 Bell Helicopter is "a separately incorporated subsidiary of Textron." *Rosen v. Textron Inc.*, 321 F. Supp. 2d 308, 327 (D.R.I. 2004).

***Plaintiffs do not, because they cannot, refute Magistrate Judge Almond's holding that "there is no allegation that [the Marine falsification scandal] involved Defendants, or any Textron employees for that matter." May 10 Order at 8-9 (PA Ex. A). Indeed, not one of the allegations identified by plaintiffs in their motion for reconsideration or their appeal concerns Textron or Messrs. Campbell, Janitz or French, the current and former Textron officers who are named as defendants. See Ps' Reconsideration Br. at 4-5; Ps' Appeal Br. at 3-4.***

***Instead, plaintiffs again mischaracterize allegations concerning Bell employees as allegations concerning Textron employees.*** *See* Ps' Reconsideration Br. at 3-6; Ps' Appeals Br. at 2-6. That is patently improper. *See, e.g., Albert Fadem Trust v. American Elec. Power Co., Inc.*, 334 F. Supp. 2d 985, 1028 (S.D. Ohio 2004) (rejecting securities fraud allegations that "equate acts by a subsidiary and its employees to acts by the parent company itself"); *Chill v. General Elec. Co.*, 101 F.3d 263, 270-71 (2d Cir. 1995). Furthermore, even accepting *arguendo* plaintiffs' unfounded assertion that two unidentified Bell employees were "*potential* witnesses to the misconduct of the Marines" (Ps' Appeal Br. at 3), plaintiffs' Amended Complaint is devoid of any allegation that any Textron employee, much less any of the Textron defendants, was advised of anything that the two unidentified Bell employees allegedly "potentially" witnessed.[3]

---

[3] Plaintiffs' Amended Complaint also is devoid of any allegation that any of the Textron defendants was advised of anything that former Bell President John Murphey might have learned from a November 21, 2000 e-mail exchange on which Murphey was copied. Moreover, plaintiffs' assertion that the e-mail exchange implicates Murphey (Ps' Appeal Br. at 4) is belied by the December 2001 Inspector General Report upon which they purport to rely. As set forth in the Inspector General Report, the November 21, 2000 e-mail exchange did ***not*** involve any of the Marine Corps personnel who were determined to have participated in the falsification scheme. *See* Inspector General Report at C-1, C-2 (Exhibit 1 to Ds' Appendix of Exhibits, dated June 8, 2005 (Docket No. 125)). It thus defies the imagination for plaintiffs to claim that the e-mail exchange shows that Murphey was somehow aware of the falsification scheme. Defendants made this precise point in their opposition to plaintiffs' motion for reconsideration. *See* Ds' Opp'n to Reconsideration, dated June 8, 2005, at 4 n.3 (DA Ex. 2). It is telling that, in their appeal, plaintiffs again make no attempt to dispute this point. ***Indeed, it is incredibly irresponsible, if not defamatory, for plaintiffs to continue to make such a baseless accusation against Mr. Murphey, a non-party here.***

All of the foregoing was briefed in detail in defendants' opposition to plaintiffs' motion for reconsideration. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Reconsideration, dated June 8, 2005, at 1-4 (DA Ex. 2). It is thus particularly galling that, rather than make any attempt to explain why they have mischaracterized allegations concerning Bell employees as allegations concerning Textron, plaintiffs have regurgitated the same mischaracterizations and even gone so far as to accuse defendants of having "misstated" and "falsely recast" the record. Ps' Appeal Br. at 5.

Furthermore, plaintiffs again fail to offer any concrete explanation as to how the alleged falsification of maintenance data by the Marines had any bearing on the accounting for the V-22. As courts have long made clear, "the standard of relevancy . . . is not so liberal as to allow a party to *roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so*." *Beneficial Fin. Co. v. Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) (emphasis added).

## II. Magistrate Judge Almond Properly Limited The Scope <u>Of Plaintiffs' Proposed Privacy Act Protective Order</u>

The only purported basis for plaintiffs' appeal of Magistrate Judge Almond's order on plaintiffs' motion for entry of a Privacy Act protective order is "the Magistrate's erroneous stance with respect to the [Marine] falsification scheme." Ps' Appeal Br. at 7. As demonstrated above, Magistrate Judge Almond's holdings in both his May 10 and July 20 orders rejecting plaintiffs' attempt to obtain documents relating to the falsification scandal were entirely proper. Thus, plaintiffs' appeal of Magistrate Judge Almond's order on the Privacy Act protective order also should be rejected. The following chronology puts plaintiffs' actions in perspective.

A. **On September 21, 2004, Plaintiffs Serve A "Touhy" Request To The DoD**

On September 21, 2004, plaintiffs served the Department of Defense ("DoD") with what is sometimes referred to as a "Touhy" request. *See* 32 C.F.R. § 97.1 *et seq.*; *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951). Though in June 2004 this Court had dismissed all of plaintiffs' claims except for their V-22 claim, plaintiffs did not limit their September 2004 "Touhy" request to documents relating to the V-22. *See* Plaintiffs' Touhy Request (PA Ex. E). Plaintiffs did not notify defendants of their "Touhy" request to the DoD.

B. **On March 28, 2005, Plaintiffs Serve A Subpoena Upon The DoD**

On March 28, 2005, plaintiffs issued a subpoena to the DoD. *See* PA Ex. F. Plaintiffs provided defendants a copy of that subpoena, but again did not disclose their September 21, 2004 "Touhy" request to the DoD. Defendants notified plaintiffs and the DoD about their objections to plaintiffs' subpoena. *See* Defendants' 4/19/05 Letter (DA Ex. 3). Plaintiffs never followed up on defendants' objections to the subpoena, apparently opting instead to pursue documents from the DoD through their undisclosed "Touhy" request.

C. **On June 17, 2005, Plaintiffs Reveal For The First Time Their September 21, 2004 "Touhy" Request To The DoD**

On June 17, 2005, plaintiffs filed their motion for entry of Privacy Act protective order and revealed for the first time that, nine months earlier, they had served a "Touhy" request to the DoD. *See* Plaintiffs' Motion for Entry of Privacy Act Protective Order, dated June 17, 2005 (DA Ex. 4). Plaintiffs now claim that they did not attach their "Touhy" request to their motion "through an oversight." Ps' Appeal Br. at 8. In fact, on June 24, 2005, defendants specifically requested a copy of plaintiffs' "Touhy" request. *See* Defendants' 6/24/05 Letter (DA Ex. 5). Plaintiffs refused to provide defendants a copy, and defendants were forced to oppose plaintiffs' motion without a copy. *See* Defendants' Memorandum, dated July 1, 2005 (DA Ex. 6).

The reason plaintiffs did not want to disclose their "Touhy" request to defendants or Magistrate Judge Almond is because the request contravenes the parameters for discovery established by the Court. For example, as plaintiffs now admit, "the materials covered by the 'Touhy' request relate to the [Marine] falsification scheme." Ps' Appeal Br. at 9. In other words, with their motion for entry of Privacy Act protective order on June 17, 2005, plaintiffs sought Magistrate Judge Almond's imprimatur to expedite the production of documents from the DoD relating to the Marine Corps falsification scandal – the very documents which Magistrate Judge Almond had barred plaintiffs from seeking just one month earlier. *See* May 10 Order at 8-9 (PA Ex. A). Additionally, the time period for plaintiffs' "Touhy" request was plainly overbroad. On September 13, 2004, this Court limited the relevant period for document discovery to "fiscal year 2000 and the first three quarters of 2001." Discovery Scheduling Order, dated September 13, 2004, ¶ 2 (DA Ex. 7). Yet, just one week later, on September 21, 2004, plaintiffs issued their "Touhy" request to the DoD with no time limitation. *See* PA Ex. E. And, though plaintiffs now claim that they are "amenable" to the January 1, 2000 to September 31, 2001 time period established by this Court (Ps' Appeal Br. at 8), the proposed protective order plaintiffs have submitted with their appeal again goes beyond the proper time period. *See* PA Ex. G, ¶ 2d.[4]

---

4 It is axiomatic that the scope of discovery as to a non-party, like the DoD, cannot be broader than the scope of discovery as to a party. *See, e.g., Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). In fact, it is well-established that the "standards for nonparty discovery . . . require a *stronger* showing of relevance than for simple party discovery." *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (emphasis added). Moreover, the DoD regulations pursuant to which plaintiffs made their "Touhy" request do not permit a litigant to obtain from the DoD documents which the requesting party is not otherwise entitled to obtain under the Federal Rules of Civil Procedure. Indeed, the factors that must be considered under 32 C.F.R. § 97.6(b) include "whether the request or demand is unduly burdensome or otherwise inappropriate under the applicable court rules," and "whether the disclosure . . . is appropriate under the rules of procedure governing the case or matter in which the request or demand arose."

In short, with their long-concealed "Touhy" request, plaintiffs have unilaterally sought to obtain documents outside the parameters of discovery established by the Court. Plaintiffs tried, but failed to obtain from Magistrate Judge Almond entry of a protective order that, unbeknownst to Magistrate Judge Almond, would have expedited the production of documents which Magistrate Judge Almond already had barred plaintiffs from seeking. *See* Plaintiffs' Motion for Privacy Act Protective Order, dated June 17, 2005 (DA Ex. 4). Plaintiffs now ask this Court to effectively sanction their backdoor attempt to have had Magistrate Judge Almond unwittingly enter a protective order that would have contravened his own prior May 10 Order by reversing Magistrate Judge Almond's July 20 order.[5] It is no wonder that "plaintiffs have elected to appeal . . . rather than seek reconsideration" from Magistrate Judge Almond. Ps' Appeal Br. at 9. Plaintiffs' appeal should be rejected.

---

5 Moreover, plaintiffs omit to mention that this Court would be unwittingly expediting the production of documents wholly unrelated to the V-22 if it were to reverse Magistrate Judge Almond's July 20 order and enter, as plaintiffs request, a protective order "to encompass the materials sought in the 'Touhy' request." Ps' Appeal Br. at 8. Indeed, because plaintiffs' "Touhy" request seeks "all documents concerning . . . Bell Helicopter" (PA Ex. E, at 1), it is not limited to the V-22 and encompasses, *inter alia*, documents relating to plaintiffs' dismissed claim on Bell's H-1 program.

## CONCLUSION

For all these reasons, defendants respectfully request that the Court deny plaintiffs' appeal of Magistrate Judge Almond's July 20, 2005 Orders and grant such other and further relief as the Court deems appropriate.

Dated: Providence, Rhode Island
August 17, 2005

Respectfully submitted,

ADLER POLLOCK & SHEEHAN P.C.

By: ______________________
John A. Tarantino (#2586)
Paul V. Curcio (#1965)

One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants