UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOEL ROSEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ and THEODORE R. FRENCH,

Defendants.

C.A. 02-190S

**DEFENDANTS' APPENDIX OF EXHIBITS CITED IN THEIR MOTION TO DIRECT PLAINTIFFS TO COMPLY WITH THE COURT'S MAY 10, 2005 ORDER**

ADLER POLLOCK & SHEEHAN P.C.
John A. Tarantino (#2586)
Paul V. Curcio (#1956)
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
(401) 274-7200

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
(212) 351-4000

Attorneys for Defendants

August 15, 2005

**INDEX**

| Exhibit | Document | Date |
|---|---|---|
| 1 | Memorandum and Order | 5/10/05 |
| 2 | Ps' Original Document Demand No. 16 | 12/15/04 |
| 3 | Ps' Amended Document Demand No. 16 | 6/16/05 |
| 4 | Ds' Responses and Objections to Ps' Amended Document Demand No. 16 | 7/15/05 |
| 5 | Ds' Letter Requesting Meet and Confer | 7/18/05 |
| 6 | Ps' Letter Indicating Intent to File Motion to Compel | 7/29/05 |
| 7 | Ds' Letter Regarding Meet and Confer | 8/2/05 |
| 8 | Ds' E-mail Advising of their Availability for Meet and Confer | 8/5/05 |
| 9 | Ps' Letter Demand that Ds Acquiesce Within 24 Hours | 8/9/05 |
| 10 | Ds' Letter Identifying Issues With Ps' Letter Demand and Requesting Meet and Confer | 8/10/05 |
| 11 | Ps' Letter Indicating Intent to File Motion to Compel In Advance of Any Meet and Confer | 8/12/05 |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOEL ROSEN, et al. | : | |
| | : | |
| v. | : | C.A. No. 02-190S |
| | : | |
| TEXTRON, INC., et al. | : | |

**MEMORANDUM AND ORDER**

Before this Court is Plaintiffs' Motion to Compel Production of Documents (Document No. 76). This Motion has been referred to me for determination. 28 U.S.C. § 636(b)(1)(A); Local Rule 32(b). A hearing was held on April 15, 2005. As specifically set forth below, Plaintiffs' Motion is GRANTED in part and DENIED in part.

**Background**

This is a consolidated securities fraud class action brought by and on behalf of purchasers of Textron, Inc. ("Textron") common stock between October 19, 2000 and September 26, 2001 (the "Class Period"). Plaintiffs' Motion for Class Certification has not yet been decided by the Court. On June 15, 2004, District Judge William Smith, applying the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), denied Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. Rosen v. Textron, Inc., 321 F. Supp. 2d 308 (D.R.I. 2004). However, in denying Defendants' Motion, Judge Smith ruled that Plaintiffs had failed to allege sufficient facts to state a claim for securities fraud as to certain allegations related to the "H-1" upgrade contract and the Omniquip acquisition.

Following Judge Smith's ruling on the Motion to Dismiss, he issued a Discovery Scheduling Order (the "Order") which required Defendants to produce certain documents (1) "relating to the

104

accounting adjustment made by Textron in the third quarter of fiscal year 2001 concerning the V-22 program" and (2) "relating to Textron's accounting for the V-22 program (including operational documents) during fiscal year 2000 and the first three quarters of fiscal 2001." (Document No. 53). The Order also permitted Plaintiffs to serve a further document production request upon Defendants after receiving the documents described above but not later than December 15, 2004.

On December 15, 2004, Plaintiffs served a Request for Production of Documents on Defendants consisting of thirty-two individual requests excluding subparts. On January 4, 2005, Defendants responded with general objections and specific objections to each of the thirty-two requests. The parties remain in dispute as to thirteen of the requests (Nos. 4, 11, 12, 14-16, 18, 20, 21, 23-25 and 32).

**Discussion**

**A. Defendants' General Objection No. 1**

A fundamental dispute exists between the parties regarding the scope of document discovery set by Judge Smith's Order. (Document No. 53). Not surprisingly, Defendants argue for a narrow reading and Plaintiffs argue for a broad reading. Defendants assert:

> The Court fixed the scope of document discovery provided in Paragraphs 1 and 2 of the...Order, and contemplated that that would constitute the vast bulk of defendants' document production. Paragraph 7 of the...Order was added for the limited purpose of allowing plaintiffs to serve *discrete* requests, requesting specific documents that the plaintiffs believed had been omitted from the initial production.

Defs.' Objections to Pls.' Req. for Produc. of Docs., p. 1

Plaintiffs argue that paragraph 7 was not intended to limit Plaintiffs' discovery rights under Fed. R. Civ. P. 34 in any way.

This Court does not interpret paragraph 7 of Judge Smith's Order as a limiting or protective order. See Fed. R. Civ. P. 26(c). Rather, this Court considers paragraphs 1 and 2 of the Order to be analogous to initial disclosures under Fed. R. Civ. P. 26(a)(1) simply intended by Judge Smith to get the "ball rolling" on discovery in an orderly and efficient fashion. Paragraph 7 of the Order contains none of the limitations on scope suggested by Defendants. In fact, the only limitations contained in paragraph 7 of the Order relate to the timing of Plaintiffs' document production request – after receiving documents from Defendants under paragraphs 1 and 2, but "by December 15, 2004." Thus, Plaintiffs' Motion will be decided applying the general discovery parameters provided under Fed. R. Civ. P. 26.

**B. Request No. 4[1] (Analysis of Stock Price)**

"Plaintiffs allege that persons who bought Textron stock during the Class Period paid an artificially inflated price." Rosen v. Textron, 321 F. Supp. 2d at 311. Thus, Plaintiffs argue they are entitled to discover internal communications and other documents discussing what factors moved, or were believed by Defendants to move, the price of Textron stock. Defendants contend that Plaintiffs already have documents breaking down the September 26, 2001 accounting adjustment and that there are no documents in existence evaluating the relationship between the V-22 program and Textron's stock price.

Since Defendants will likely defend this case, in part, by arguing that factors other than the V-22 program and the 2001 accounting adjustment caused the stock price movement during the Class Period, Plaintiffs are entitled to discover information regarding what Defendants were saying

[1] In addition to lengthy general objections, Defendants object individually to each of the requests in dispute as "vague, ambiguous, overbroad, and unduly burdensome," and "not reasonably calculated to lead to the discovery of relevant or admissible evidence."

internally and to the public regarding the actual and/or anticipated reasons for stock price movements during the Class Period. Thus, Defendants' objections are overruled, and Plaintiffs' Motion to Compel as to Request No. 4 is GRANTED except Plaintiffs' "Relevant Time Period" is restricted to the "Class Period."

**C. Request No. 11 (Key Document Discovery)**

This request lists eight so-called "key documents" which are already in Plaintiffs' possession and were provided to the Court as part of a Joint Appendix submitted in connection with Defendants' Motion to Dismiss. Plaintiffs are seeking drafts, responses, comments, reactions, notes, etc., concerning the key documents. Defendants argue that Plaintiffs already have copies of these documents and that Plaintiffs are not entitled to discovery regarding Defendants' reaction to these documents because they "already have produced documents that had any bearing on the accounting for the V-22."

Defendants' argument on this request is both confusing and unconvincing. Defendants simply do not directly address Plaintiffs' request or their arguments. Since the request is confined to documents concerning "key documents" in this case, Defendants' objections are overruled, and Plaintiffs' Motion to Compel as to Request No. 11 is GRANTED.

**D. Request No. 12 (Government Funding)**

Plaintiffs argue they are entitled to documents regarding Government funding for the V-22 program because they allege that "defendants inflated the revenues and profits for the V-22 program." Defendants counter that this is not a cost overrun case and that they have already agreed to produce, or have produced, documents concerning costs or schedules associated with the V-22 program and have produced a "Contract Value/Funding Status Report" relating to the V-22 program.

In reviewing Plaintiffs' allegations, Judge Smith recognized that they "stem" from the September 26, 2001 accounting adjustment. He described Plaintiffs' claims as alleging that Defendants had "detailed knowledge" of the V-22 program setbacks and intentionally delayed in making profit estimate adjustments to conform to GAAP. There is nothing in Judge Smith's decision to indicate that the adjustments were related to funding issues. Rather, he stated "the Plaintiffs contend that the September 26, 2001 accounting adjustments should have been made in October 2000 when the Defendants became aware that additional costs and production setbacks would affect the Osprey Program." 321 F. Supp. 2d at 315 (emphasis added). Thus, Defendants' objections are sustained, and Plaintiffs' Motion to Compel as to Request No. 12 is DENIED.

**E. Request No. 14 (Executive Compensation)**

Plaintiffs seek documents concerning the compensation of the Individual Defendants (Campbell, Janitz and French) and Bell Helicopter President Murphey who is not a defendant. Plaintiffs argue that such discovery is relevant to scienter, citing Aldridge v. A.T. Cross Corp., 284 F.3d 72 (1st Cir. 2002). In Aldridge, the Court held that executive financial incentives that "go far beyond the usual arrangements of compensation based on the Company's earnings" may be considered among other facts to show scienter. 284 F.3d at 83.

While Defendants correctly point out that such evidence alone is not enough to establish scienter, Defendants have not otherwise convinced this Court that Plaintiffs should be precluded from this line of discovery in view of the Aldridge case. On the other hand, Plaintiffs have not established the relevance of such discovery as to Bell Helicopter President Murphey – a non-party to this litigation. Thus, Defendants' objections are overruled as to the Individual Defendants and

sustained as to Murphey. Plaintiffs' Motion to Compel as to Request No. 12 is GRANTED for the Individual Defendants and DENIED for Murphey.

**F. Request No. 15 (Executive Terminations)**

Plaintiffs seek documents concerning the termination of Textron President Janitz and Bell CEO Stinson. Janitz is an Individual Defendant. Stinson has been dismissed as a Defendant by Judge Smith. Citing Aldridge, Plaintiffs argue that an executive's self-interested motivation to save his job may be evidence of scienter. See also Greebel v. FTP Software, Inc., 194 F.3d 185, 196 (1st Cir. 1999).

Again, based on Aldridge, Plaintiffs have established relevance as to documents concerning the termination of Defendant Janitz as they in any way relate to, or concern, the V-22 program. Plaintiffs have not, however, established relevance as to the termination of former Defendant Stinson. Judge Smith dismissed this case as to Stinson because "Plaintiffs fail[ed] to assert that he participated in the allegedly fraudulent accounting practices" and Stinson was never a Textron officer during the Class Period. Thus, Defendants' objections as to Stinson are sustained and as to Janitz are overruled except that production is narrowed as noted above. Plaintiffs' Motion to Compel as to Request No. 15 is DENIED as to Stinson and GRANTED as to Janitz but only for termination documents that in any way relate to or concern the V-22 program.

**G. Request No. 16 (V-22 Operational Documents)**

Plaintiffs seek documents concerning the operational effectiveness, suitability, or safety of the V-22 program aircraft. Defendants argue that the request is "extremely broad" and that they have already produced "operational" documents related to Textron's accounting for the V-22 program.

Although this Court agrees that the request is somewhat broad, it is also limited by the "Relevant Time Period" of Plaintiffs' request – January 1, 2000 through September 30, 2001. At the hearing, Defendants' counsel described his clients' position as a "burdensomeness and minimal relevance objection" which would unnecessarily require production of the time records of workers. In other words, Defendants appear to argue that "the burden or expense of the proposed discovery outweighs its likely benefit." See R. Civ. P. 26(b)(2).

Plaintiffs correctly argue that the 2001 accounting adjustment cannot be examined in an accounting vacuum. The percentage-of-completion accounting method utilized by Textron requires ongoing monitoring and review of progress on the contract "in order to make accurate estimates of total contract cost, total contract revenues, and the extent of progress toward contract completion." 321 F. Supp. 2d at 314-15. This accounting method necessarily involves an assessment of the operational status of the contract. Thus, Defendants' objections are overruled, and Plaintiffs' Motion to Compel as to Request No. 16 is GRANTED subject, however, to the following condition. Plaintiffs shall serve an amended Request No. 16 on Defendants which targets and more particularly identifies the specific documents sought and/or the specific documents not sought (such as employee time cards).

**H. Request No. 18 (V-22 Program Full-Rate Production)**

Plaintiffs seek documents regarding full-rate production for the V-22 program. Defendants assert that such documents are not relevant because there was never a full-rate production contract, and they have produced documents confirming that the 2001 accounting adjustment related solely to the V-22 program EMD contract.

Although Defendants correctly point out that there was never an actual full-rate production contract, Judge Smith's Ruling on the Motion to Dismiss did not isolate Plaintiffs' claims, at least at this stage of the litigation, to the EMD contract. Judge Smith held that "the alleged fraud involves the impact that delays in reaching full-rate production had on Textron's accounting for its existing contracts." 321 F. Supp. 2d at 324. He also did not resolve at this stage the factual question as to "[w]hether the required accounting adjustments related only to development contracts or to full-rate production (or both)." Id. While Defendants may disagree with Judge Smith's conclusions in this regard, this Court must look to his ruling for guidance in sorting through this pending Motion to Compel. Thus, based on Judge Smith's findings noted above, Defendants' objections are overruled, and Plaintiffs' Motion to Compel as to Request No. 18 is GRANTED.

**I. Requests Nos. 20 and 21 (Governmental Investigations)**

Plaintiffs seek various documents regarding Governmental investigations or audits concerning the V-22 program. The parties' arguments have a familiar ring. Plaintiffs say the issue is what Defendants knew and when they knew it. In other words, they argue they need these documents to establish when Defendants were on notice as to the V-22 program problems. Defendants say there was never an investigation into the "accounting" for the V-22 program and Plaintiffs already have the Government reports.

Even though Plaintiffs may already have the Government reports, they argue convincingly that internal documents evidencing Defendants' reaction to, or awareness of, such Government findings, and documents from Defendants to the Government regarding such findings are relevant. Plaintiffs have not, however, made a convincing showing as to the relevance of such documents concerning the so-called "falsification scandal" since there is no allegation that it involved

Defendants, or any Textron employees for that matter. Thus, Defendants' objections are sustained only in part and otherwise overruled. Plaintiffs' Motion to Compel as to Request No. 20 is DENIED and as to Request No. 21 is GRANTED.

**J. Requests Nos. 23 and 24 (Other Litigation)**

Plaintiffs seek various documents from other litigation involving the V-22 program. Plaintiffs argue that such information may include statements Defendants and other key witnesses may have made about the V-22 program in those cases. Defendants contend that the request does not seek relevant information because there has been no parallel litigation about the "accounting" for the V-22 program and also that the request is objectionable because it seeks public records to which Plaintiffs have independent access.

Defendants are correct that they should not be required to produce documents which Plaintiffs can themselves obtain from the public domain. However, some of the proceedings identified in the request, such as arbitrations, may not be in the public domain and some of the documents identified in the request, such as deposition transcripts and discovery responses, may not be in the public domain. However, Plaintiffs' request is overbroad given Plaintiffs' indication that they are seeking statements "concerning when Defendants knew or should have known that design and schedule changes were necessary." Thus, Defendants' objections are sustained, but only in part, and Plaintiffs' Motion to Compel as to Requests Nos. 23 and 24 is GRANTED in part. Defendants shall provide Plaintiffs with a listing of such "parallel litigation" pending at any time during the Class Period with sufficient identifying information such as case name, forum, case number, filing date, etc. In addition, Defendants shall produce any documents containing sworn statements or testimony of the Individual Defendants in such litigation.

**K. Request No. 25 (Systems Information)**

Plaintiffs seek documents regarding systems used for estimating and monitoring costs and schedules (including the Earned Value Management System ("EVMS")), as well as documents regarding Government inquiries, reviews, etc. concerning the EVMS. Defendants argue that since they have provided Plaintiffs with the underlying data produced by these systems, Plaintiffs have no need for discovery regarding the systems themselves.

Plaintiffs repeatedly argue in connection with their Motion to Compel that they need various documents in order to prove "what defendants knew and when they knew it." Rather than focusing on what Defendants knew and when, this Request focuses more on how they knew it and/or what they did not know. Thus, Defendants' objections are sustained and Plaintiffs' Motion to Compel as to Request No. 25 is DENIED.

**L. Request No. 32 (Document Retention)**

Plaintiffs seek documents concerning Textron's document retention policies and procedures. Defendants object arguing that Plaintiffs are not entitled to such documents because, as Plaintiffs concede, "there is no evidence of intentional misconduct here." See In re Honeywell Int'l, Inc. Sec. Litig., No. M8-85 WHP, 2003 WL 22722961 at *9 (S.D.N.Y. Nov. 18, 2003) (denying document retention policy discovery due to the lack of "a concrete basis" for the request). Likewise, Plaintiffs also have not articulated any "concrete basis" for their request in this case. Thus, Defendants' objections are sustained, and Plaintiffs' Motion to Compel as to Request No. 32 is DENIED.

For the reasons discussed above, Plaintiffs' Motion to Compel Production of Documents (Document No. 76) is GRANTED in part and DENIED in part. Defendants shall produce any responsive documents within thirty (30) days of the date of this ORDER.

Lincoln D. Almond
United States Magistrate Judge
May 10, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | : Civil Action No. 02-190S |
| LESLIE TURBOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | : Civil Action No. 02-264S |

**LEAD PLAINTIFFS' FIRST REQUEST**
**FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rhode Island U.S. District Court Rule 13, Lead Plaintiffs, by their counsel, hereby request that defendants Textron, Inc., Lewis B. Campbell, John A. Janitz, and Theodore R. French produce and permit Plaintiffs' counsel to inspect and copy those documents described herein which are in the

g. the "JAGMAN" Investigative Report 5830, by Lt. Col. Steven M. Keim, dated February 23, 2001; and

h. The V-22 Master Acquisition Plan.

12. All documents concerning government funding for the V-22 Program, including all documents concerning the adequacy or inadequacy of such funding, requests for additional funding, funding reserves, affordability of the program to the United States, comparisons of funding to cost estimates, and whether funding caps would be exceeded.

13. All documents concerning risk analysis for the V-22 Program, including:

a. Level Risk Summaries, including those reflecting a "Risk Grid;"

b. V-22 Risk Item Reports;

c. Weekly or other periodic CPI Performance Reports; and

d. The Risk Database.

14. All documents concerning the compensation of the Individual Defendants and Bell President Murphey, including bonuses, options, the formulas and criteria for determining compensation, and any job performance goals or evaluations.

15. All documents concerning the termination of Textron President Janitz and Bell CEO Stinson.

16. All documents concerning the operational effectiveness, suitability, or safety of the V-22 Aircraft, including:

a. all documents concerning any tests proposed or performed involving any aspect or phase of the design, development, production, or repair of the V-22 Aircraft;

b. all documents concerning the crashes of V-22 Aircraft on April 8, 2000 and December 11, 2000, including, but not limited to, documents concerning any action proposed or taken by Textron as a result of these crashes with respect to the design, development, production, cost estimates, or production schedule adjustments for the V-22 Program;

c. all documents concerning the V-22 Program "mission capable" rates (e.g., "MC" or "FMC" rates), including all documents that discuss or analyze whether the V-22 Aircraft met or failed to meet any "mission capable" rates;

d. all documents concerning any scheduled, proposed, postponed, aborted, cancelled, or completed test flights of the V-22 Aircraft, including, but not limited to, reasons for, descriptions and analyses of, cost estimates for, and actions taken after each test flight;

e. all documents concerning any proposed or actual grounding or temporary cessation of V-22 Aircraft flights;

f. all documents concerning any alleged, potential, or actual mechanical, operational, or safety deficiencies of the V-22 Aircraft; and

g. all reports generated by the Aircraft Defect Evaluation and Disposition ("ADED") system.

17. All communications between Textron and any of the persons identified on Schedule A (and their staffs) and all documents concerning those communications, including any documents concerning meetings with any of those persons.

18. All documents concerning full-rate production for the V-22 Program, including:

a. all documents concerning the Milestone III decision by the Assistant Secretary to the Navy for Research, Development and Acquisition, which was scheduled to occur on or about December 5, 2000;

b. the briefings to the Milestone Decision Authority, including the Overarching Integrated Product Team Review and the Acquisition Review Board brief;

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated, Plaintiffs, vs. TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON, Defendants. | Civil Action No. 02-190S |
| LESLIE TURBOWITZ, individually and on behalf of all others similarly situated, Plaintiffs, vs. TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON, Defendants. | Civil Action No. 02-264S |

RECEIVED
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

JUN 1 8 2005

LEAD PLAINTIFFS' AMENDED REQUEST FOR
PRODUCTION OF DOCUMENTS NUMBER 16 TO DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rhode Island U.S. District Court Rule 13, and the Court's Memorandum and Order dated May 10, 2005, Lead Plaintiffs, by their counsel, hereby request that defendants Textron, Inc., Lewis B. Campbell, John A. Janitz, and Theodore R. French produce and permit Plaintiffs' counsel to inspect and

copy those documents described herein which are in the possession, custody, or control of the defendants or any of their officers, partners, employees, agents, or attorneys, in accordance with the Definitions and Instructions set forth below, at the offices of Kirby McInerney & Squire, LLP, 830 Third Avenue, New York, New York 10022, or at such other place agreed upon by counsel, within thirty (30) days of service.

DEFINITIONS

1. The term "Textron" means Textron, Inc. and any of its present or former subsidiaries, business segments, divisions, subdivisions, affiliates, predecessors, joint ventures, boards of directors, employees, representatives, agents (including without limitation its attorneys, accountants, auditors, and advisors), and all other persons acting, purporting to act, or authorized to act on its behalf. The term "Textron" includes the present Bell Helicopter division ("Bell") and any of its present or former subsidiaries, business segments, divisions, subdivisions, affiliates, predecessors, joint ventures, boards of directors, employees, representatives, agents (including without limitation its attorneys, accountants, auditors, and advisors), and all other persons acting, purporting to act, or authorized to act on its behalf. The term "Textron" also includes the Bell-Boeing joint venture for the V-22 Program.

2. The term "Defendants" means Textron and defendants Lewis B. Campbell, Theodore R. French, and John A. Janitz, and each of their representatives, agents, attorneys, accountants, and all other persons acting, purporting to act, or authorized to act on behalf of any of these defendants.

3. The term "E&Y" means Ernst & Young LLP and any of its predecessors, divisions, affiliates, subsidiaries, parents, present or former partners and employees, agents, or

representatives, whether located within the United States or at international locations, and all other persons or entities acting, purporting to act, or authorized to act on its behalf.

4. The term "SEC" means the Securities and Exchange Commission of the United States, and any person, agency, or other entity acting, purporting to act, or authorized to act on its behalf.

5. The term "DoD" means the United States Department of Defense, and any of its divisions, branches, committees, or other subgroups, as well as any person, agency, or other entity acting, purporting to act, or authorized to act on its behalf.

6. The term "GAAP" means the Generally Accepted Accounting Principles as applied by certified public accountants in the United States.

7. The term "V-22 Program" includes the engineering, design, development, manufacture, production or any work on the V-22 tilt rotor aircraft developed and produced by Textron and/or Bell and Boeing Company, including each of the aircraft's individual component parts. The term "V-22 Aircraft" includes the "V-22," the "MV-22," the "CV-22" and all other variants of the aircraft.

8. The term "Amended Complaint" means the Corrected Consolidated Amended Class Action Complaint for Violations of federal Securities Laws filed by plaintiffs in this case on September 11, 2003.

9. The term "Document" means all material within the scope of Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to, any kind of typewritten, hand-written, printed, electronically produced or conveyed, reproduced, or recorded material whatsoever. This term includes, but is not limited to: notes, memoranda, correspondence, e-mail

messages and their attachments, instant or text messages, telephone and cellular phone call logs and message tapes, reports, analyses, charts, graphs, facsimile communications, audio and/or visual recordings, transcripts of meetings or telephone conversations, appointment books and calendars, diaries, and financial statements of any kind.

10. The term "communication" means the transmittal of information (in the form of facts, ideas, inquires or otherwise).

11. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12. The terms "all" and "each" shall be construed as all and each.

13. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14. The term "including" means "including but not limited to."

## INSTRUCTIONS

1. This request is continuing so as to require supplemental responses, as specified in Federal Rule of Civil Procedure 26(e).

2. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories of this request to which each document is responsive.

3. Documents attached to one another in Defendants' possession shall not be separated when produced. This pertains also to attachments to e-mail messages.

4. Defendants are required to produce the original of each document responsive to this request together with all non-identical copies and drafts of that document within their possession, custody, or control.

5. If any document is withheld, in whole or in part, for any reason, including but not limited to a claim of privilege, set forth separately for each document: (a) the nature of the privilege claimed or reason asserted for withholding the document; (b) the type of document; (c) the author(s) of the document; (d) all addressees of the document; (e) the names of all persons who received copies of the document; (f) the date of the document; and (g) a brief description of the subject matter of the document.

6. If a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible.

7. If any document responsive to this request was but is no longer in Defendants' possession, custody, or control, state whether the document: (a) is missing or has been lost; (b) has been purposely or inadvertently destroyed; (c) has been purposely or involuntarily transferred to others; or (d) has been otherwise disposed of. In each instance, describe the circumstances surrounding defendants' loss of possession, custody, or control of the document and the approximate date on which that loss occurred.

8. In Defendants' response to each paragraph of this request, identify by Bates number or other means the identity of the person, department, or division from whose files the document(s) are being produced.

9. The use of the singular form of any word includes the plural and vice versa.

RELEVANT TIME PERIOD

Unless otherwise specified in an individual paragraph, this request requires production of all documents created during, and all documents that refer or relate to, the time period January 1, 2000 through September 30, 2001 (the "Relevant Time Period") or any portion of that period. Please note that all documents concerning the Relevant Time Period are included regardless of the date that the documents were created.

AMENDED REQUEST FOR PRODUCTION OF DOCUMENTS NUMBER 16

16. The following documents concerning the operational effectiveness, suitability, or safety of the V-22 Aircraft:

a. all reports or other documents concerning all action proposed or taken as a result the crashes of V-22 Aircraft on April 8, 2000, and December 11, 2000, with respect to the design, redesign, development, production, cost estimates for the V-22 Program, including EMD contract no. N00019-93-C-0006, LRIP contract numbers N00019-96-C-0054, N00019-96-C-0054-2, N00019-96-C-0054-3, and N00019-99-C-1090;

i. all reports or other documents concerning the impact of the crashes of V-22 Aircraft on April 8, 2000, and December 11, 2000, on the master program schedules and production schedules of EMD contract no. N00019-93-C-0006, LRIP contract numbers N00019-96-C-0054, N00019-96-C-0054-2, N00019-96-C-0054-3, and N00019-99-C-1090 for the V-22 Program;

b. all engineering family tree drawings for the V-22 FSD, EMD and LRIP Lot 1 and 2 configurations;

c. all summary reports or other documents sufficient to identify all parts and subsystems of the V-22 that contain information on how the mean-time-before-failure ("MTBF") data obtained in the test program did not meet the expected MTBF which led to either (1) redesign in order to meet projected operational MTBF, or (2) a change in the proposed operational MTBF. For each part or subsystem identified, all documents that describe and quantify the proposed or actual redesign effort in terms of cost, time

and man hours to bring the part or subsystem into the MTBF specification;

d. all logs kept that set forth the pre-test program predicted performance levels (e.g. MTBF or similar reliability measurands) of each V-22 system, subsystem and part versus the corresponding actual mean time to repair and all analysis that showed how the difference between the predicted rates versus the actual rates impacted operations;

e. all documents concerning the V-22 Program "mission capable" rates (e.g., "MC" or "FMC" rates), including all documents that discuss or analyze whether the V-22 Aircraft met or failed to meet any "mission capable" rates and the cost of all redesign efforts undertaken to improve said rates;

f. all documents discussing or reflecting the reasons why anticipated mission capable rates were not met;

g. all documents that contain analysis or discussion of the availability of test articles for the V-22 Program;

h. the flight test program plan for the V-22 Aircraft, including projections of flight hours per month, sorties per month, and the actual flight hours and sortie rates achieved each month;

i. all documents that reflect the actual flight hours per month and sorties per month of the V-22 Aircraft;

j. all documents that explain why the actual flight hours per month and sorties per month of the V-22 Aircraft differed from the projections identified in documents produced pursuant to request "h" above;

k. all test and evaluation master plans for the V-22 Program;

l. all test plans for the V-22 Program, including, but not limited to stress testing, environmental testing, and flight testing;

m. all documents that reflect discussions or analysis of variances from the V-22 Program test plans identified in requests "m" and "n" and the impact these variances were projected to or actually had on the V-22 program;

n. all documents concerning any scheduled, proposed, postponed, aborted, cancelled, or completed test flights of the V-22 Aircraft, including but not limited to reasons for, descriptions and analyses of, cost estimates for, actions taken as a result of flight test or other testing (e.g. fatigue and stress tests), and impact on mean-time-between-failure rates and

maintenance time per flight hour;

o. all documents concerning any proposed or actual grounding or temporary cessation of V-22 Aircraft flights as these actions impacted the maintenance and reliability, operational effectiveness and the effect of all redesign efforts on operations, delay of the flight test program, delay of going into production and the increase in cost to the company resulting from these delays;

p. all documents concerning any alleged, potential, or actual mechanical, operational, or safety deficiencies of the V-22 Aircraft;

q. all reports generated by the Aircraft Defect Evaluation and Disposition ("ADED") system at both the company and government levels as it relates to the V-22 test program;

r. all documents that set forth the planned repairs of all V-22 systems using the metric maintenance man hours to flight hours. For the purposes of this request, the term "V-22 systems" includes, but is not limited to, (1) the air frame; (2) flight controls; (3) engines; (4) weapons systems; (5) fuel; (6) cargo handling; (7) hydraulics; and (7) avionics;

s. all documents that set forth changes to the planned repairs identified in materials produced pursuant to request "r";

t. all documents and records describing all planned and unplanned repairs made pursuant to the planned repair schedule identified in request "r";

u. all headcount charts for the V-22 test program, both planned and actual;

v. All rosters or lists that identify personnel working on the V-22 program and their job titles;

w. all problem analysis reports for the V-22 program;

x. all management reports that address staffing levels for the V-22 program;

y. all materials that set forth the man hours expended due to redesign and reinstallation of all redesign subsystems of the V-22 air vehicle;

z. all materials that identify changes made to the designs of all V-22 systems and subsystems to improve their mean time to repair;

aa. all materials that identify changes made to the designs of all V-22 systems

and subsystems to improve their actual maintenance man hours per flight hour;

bb. all documents comprising Bell-Boeing's Reliability Centered Maintenance process as that data (1) applied to projected MTBF and (2) resulted in modified projections for the V-22 reliability metrics, either in the test program or for future operations;

cc. all documents describing the V-22 Program's preventative maintenance program, preventative maintenance schedule, and routine maintenance schedule as they applied to either (1) projected performance and requirements, including changes to those projections as a result of test experience, or (2) achieved performance requirements;

dd. all documents that identify the V-22's top ten "bad actors" priority logistics and maintenance items issues, or any such categorization for the prioritization of the most important reliability issues from either an operational readiness or cost basis;

ee. all "Total Quality Management" documents concerning the operational effectiveness, suitability, or safety of the V-22 Aircraft; and

ff. all deviations and waivers requested for the V-22 Aircraft for reliability, safety, operational effectiveness or Operational Ready/Operational Availability rates and all responses to each such requested deviation and waiver.

DATED: June 16, 2005

Respectfully submitted,

Law Offices of William M. Kolb, LLC

By: William M. Kolb

William M. Kolb, Esq. #3664
1 Ship Street
Providence, RI 02903
Telephone: 401-490-8297
Facsimile: 401-490-8299

Plaintiffs' Liaison Counsel

FUTTERMAN & HOWARD, CHTD.
Ronald L. Futterman, Esq.
Michael I Behn, Esq.
122 South Michigan Avenue, Suite 1850
Chicago, IL 60603
Telephone: 312-427-3600

KIRBY McINERNEY & SQUIRE, LLP
Ira M. Press, Esq.
Mark A. Strauss, Esq.
830 Third Avenue
New York, NY 10022
Telephone: 212-371-6600

Plaintiffs' Co-Lead Counsel

MILBERG WEISS BERSHAD & SCHULMAN LLP
Kirk Chapman, Esq.
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: 212-594-5300

Certificate of Service

I hereby certify that on the 16Th day of June, 2005, a true and accurate copy of the foregoing was served by first class mail, postage prepaid, upon the following:

John A. Tarantino, Esq.
Paul V. Curcio, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

[signature]

FILED
JUL 15 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, individually and on behalf of all others similarly situated,, Plaintiffs, v. TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ and THEODORE R. FRENCH, Defendants. | C.A. 02-190S |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO LEAD PLAINTIFFS' AMENDED DOCUMENT DEMAND NO. 16**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendants Textron Inc., Lewis B. Campbell, John A. Janitz and Theodore R. French hereby respond and object to lead plaintiffs' amended document demand no. 16, dated June 16, 2005.

**GENERAL OBJECTIONS**

1. On May 10, 2005, Magistrate Judge Almond directed plaintiffs to serve a new document request no. 16 that "targets and more particularly identifies the specific documents sought and/or the specific documents not sought." Memorandum and Order, dated May 10, 2005 ("May 10 Order"). Contrary to Magistrate Judge Almond's admonition that plaintiffs serve a more targeted document request, plaintiffs have served an enormous amended document demand that is nearly 10 pages long, consists of more than 30 subparts and greatly *expands* the scope of documents sought. It is improper for plaintiffs to have propounded an amended document demand that is even broader than the original document demand that Magistrate Judge Almond determined to be too broad. Indeed, the amended document demand effectively encompasses any scrap of paper relating in any way to any mechanical aspect of the

V-22, including, *inter alia*, "all documents concerning any alleged, potential, or actual mechanical, operational, or safety deficiencies of the V-22." The amended document demand also goes further and seeks, *inter alia*, the names of any employee that ever worked on the V-22, including "all headcount charts" and "all rosters or lists that identify personnel working on the V-22 program." And, though Magistrate Judge Almond noted that plaintiffs were not entitled to "employee time cards" (May 10 Order), plaintiffs have even gone so far as to demand "all materials that set forth the man hours expended" on any design work on the V-22. Defendants object to plaintiffs' expanded document demand as overbroad, unduly burdensome and in violation of Magistrate Judge Almond's directive that plaintiffs serve a more targeted document demand.

2. Defendants object to plaintiffs' amended document demand as vague, ambiguous, and/or not reasonably calculated to lead to the discovery of relevant, let alone admissible, evidence.

3. Defendants object to plaintiffs' amended document demand to the extent it seeks the production of documents that are protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or doctrine.

4. Defendants object to the instructions and definitions in plaintiffs' amended document demand to the extent they in any way deviate from or expand upon obligations, duties, or requirements set forth in the Federal Rules of Civil Procedure and the Local Civil Rules for the United States District Court for the District of Rhode Island.

5. Defendants object to plaintiffs' amended document demand to the extent that it seeks trade secrets, proprietary information or confidential commercial information not relevant to, or necessary for, this action.

6. Defendants object to plaintiffs' amended document demand to the extent that it implies defendants have a duty to seek out information not specifically within their possession, custody or control.

7. Defendants object to plaintiffs' amended document demand to the extent that it seeks documents that already have been obtained from other parties or that could more easily and properly be obtained from other parties.

8. Defendants object to plaintiffs' amended document demand to the extent that it seeks public information or information obtained from sources to which plaintiffs also have access.

9. Defendants object to plaintiffs' amended document demand to the extent that it seeks production of documents that already have been produced by defendants.

10. Defendants object to plaintiffs' amended document demand to the extent that it purports to require defendants, at their sole expense, to restore and/or recover electronic data. *See, e.g.*, Discovery Scheduling Order, dated September 13, 2004, ¶ 3.

11. Defendants object to plaintiffs' amended document demand to the extent that it seeks documents relating to allegations or matters that are not included in the Corrected Consolidated Amended Class Action Complaint, dated September 11, 2003 ("Amended Complaint").

12. In furnishing the herein responses, defendants do not concede that any of the documents defendants agree to make available in response to any request, or any sub-part thereof, is relevant to the subject matter of, or admissible in, this litigation.

13. Defendants reserve the right to supplement and/or amend their responses herein on the basis of information that comes to their attention or to the attention of their attorneys after the date of this response.

14. Any documents that are inadvertently made available to plaintiffs shall not constitute a waiver of any privilege, any other doctrine against disclosure, or the right of defendants to object to the use of any documents inadvertently made available. Defendants reserve the right to demand that plaintiffs return to defendants any documents inadvertently made available and all copies thereof.

## SPECIFIC RESPONSES AND OBJECTIONS

Subject to and without waiving or restricting the general objections set forth above, all of which are incorporated by reference into each of the following responses, defendants respond to plaintiffs' amended document request as follows:

Request No. 16

The following documents concerning the operational effectiveness, suitability, or safety of the V-22 Aircraft:

a. all reports or other documents concerning all action proposed or taken as a result the crashes of V-22 Aircraft on April 8, 2000, and December 11, 2000, with respect to the design, redesign, development, production, cost estimates for the V-22 Program, including EMD contract no. N00019-93-C-0006, LRIP contract numbers N00019-96-C-0054, N00019-96-C-0054-2, N00019-96-C-0054-3, and N00019-99-C-1090;

i. all reports or other documents concerning the impact of the crashes of V-22 Aircraft on April 8, 2000, and December 11, 2000, on the master program schedules and production schedules of EMD contract no. N00019-93-C-0006, LRIP contract numbers N0001996-C-0054, N00019-96-C-0054-2, N00019-96-C-0054-3, and N00019-99-C-1090 for the V-22 Program;

b. all engineering family tree drawings for the V-22 FSD, EMD and LRIP Lot 1 and 2 configurations;

c. all summary reports or other documents sufficient to identify all parts and subsystems of the V-22 that contain information on how the mean-time before-failure ("MTBF") data obtained in the test program did not meet the expected MTBF which led to either (1) redesign in order to meet projected operational MTBF, or (2) a change in the proposed operational MTBF. For each part or subsystem identified, all documents that describe and quantify the proposed or actual redesign effort in terms of cost, time and man hours to bring the part or subsystem into the MTBF specification;

d. all logs kept that set forth the pre-test program predicted performance levels (e.g. MTBF or similar reliability measurands) of each V-22 system, subsystem and part versus the corresponding actual mean time to repair and all analysis that showed how the difference between the predicted rates versus the actual rates impacted operations;

e. all documents concerning the V-22 Program "mission capable" rates (e.g., "MC" or "FMC" rates), including all documents that discuss or analyze whether the V-22 Aircraft met or failed to meet any "mission capable" rates and the cost of all redesign efforts undertaken to improve said rates;

f. all documents discussing or reflecting the reasons why anticipated mission capable rates were not met;

g. all documents that contain analysis or discussion of the availability of test articles for the V-22 Program;

h. the flight test program plan for the V-22 Aircraft, including projections of flight hours per month, sorties per month, and the actual flight hours and sortie rates achieved each month;

i. all documents that reflect the actual flight hours per month and sorties per month of the V-22 Aircraft;

j. all documents that explain why the actual flight hours per month and sorties per month of the V-22 Aircraft differed from the projections identified in documents produced pursuant to request "h" above;

k. all test and evaluation master plans for the V-22 Program;

l. all test plans for the V-22 Program, including, but not limited to stress testing, environmental testing, and flight testing;

m. all documents that reflect discussions or analysis of variances from the V-22 Program test plans identified in requests "m" and "n" and the impact these variances were projected to or actually had on the V-22 program;

n. all documents concerning any scheduled, proposed, postponed, aborted, cancelled, or completed test flights of the V-22 Aircraft, including but not limited to reasons for, descriptions and analyses of, cost estimates for, actions taken as a result of flight test or other testing (e.g. fatigue and stress tests), and impact on mean-time-between-failure rates and maintenance time per flight hour;

o. all documents concerning any proposed or actual grounding or temporary cessation of V-22 Aircraft flights as these actions impacted the maintenance and reliability, operational effectiveness and the effect of all redesign efforts on operations, delay of the flight test program, delay of going into production and the increase in cost to the company resulting from these delays;

p. all documents concerning any alleged, potential, or actual mechanical, operational, or safety deficiencies of the V-22 Aircraft;

q. all reports generated by the Aircraft Defect Evaluation and Disposition ("ADED") system at both the company and government levels as it relates to the V-22 test program;

r. all documents that set forth the planned repairs of all V-22 systems using the metric maintenance man hours to flight hours. For the purposes of this request, the term "V-22 systems" includes, but is not limited to, (1) the air frame; (2) flight controls; (3) engines; (4) weapons systems; (5) fuel; (6) cargo handling; (7) hydraulics; and (8) avionics;

s. all documents that set forth changes to the planned repairs identified in materials produced pursuant to request "r";

t. all documents and records describing all planned and unplanned repairs made pursuant to the planned repair schedule identified in request "r";

u. all headcount charts for the V-22 test program, both planned and actual;

v. all rosters or lists that identify personnel working on the V-22 program and their job titles;

w. all problem analysis reports for the V-22 program;

x. all management reports that address staffing levels for the V-22 program;

y. all materials that set forth the man hours expended due to redesign and reinstallation of all redesign subsystems of the V-22 air vehicle;

z. all materials that identify changes made to the designs of all V-22 systems and subsystems to improve their mean time to repair;

aa. all materials that identify changes made to the designs of all V-22 systems and subsystems to improve their actual maintenance man hours per flight hour;

bb. all documents comprising Bell-Boeing's Reliability Centered Maintenance process as that data (1) applied to projected MTBF and (2) resulted in modified projections for the V-22 reliability metrics, either in the test program or for future operations;

cc. all documents describing the V-22 Program's preventative maintenance program, preventative maintenance schedule, and routine maintenance schedule as they applied to either (1) projected performance and requirements, including changes to those projections as a result of test experience, or (2) achieved performance requirements;

dd. all documents that identify the V-22's top ten "bad actors" priority logistics and maintenance items issues, or any such categorization for the prioritization of the most important reliability issues from either an operational readiness or cost basis;

ee. all "Total Quality Management" documents concerning the operational effectiveness, suitability, or safety of the V-22 Aircraft; and

ff. all deviations and waivers requested for the V-22 Aircraft for reliability, safety, operational effectiveness or Operational Ready/Operational Availability rates and all responses to each such requested deviation and waiver.

Response and Objection to Request No. 16

Without waiving or restricting the general objections set forth above, and expressly reserving and incorporating each such general objection, defendants object to this request as overbroad and unduly burdensome. *See also* General Objection No. 1. Defendants further object to this request as vague, ambiguous and not reasonably calculated to lead to the discovery of relevant or admissible evidence. In addition, defendants object to this request as a thinly disguised effort to obtain documents that the Court already has ruled plaintiffs are not entitled to seek. For example, Magistrate Judge Almond made clear that plaintiffs were not entitled to documents relating to the Marine Corps falsification scandal concerning V-22

maintenance records: "Plaintiffs have not, however, made a convincing showing as to the relevance of such documents concerning the so-called 'falsification scandal' since there is no allegation that it involved Defendants, or any Textron employees for that matter." May 10 Order. Nevertheless, plaintiffs' amended request purports to demand all documents relating to "mean-time-before-failure" data, which, as plaintiffs are well aware, is the very same data that was at issue in the Marine Corps falsification scandal. Contrary to Magistrate Judge Almond's May 10 Order, plaintiffs have served a document demand that (1) seeks documents the Court already has ruled plaintiffs are not entitled to seek; and (2) is far broader than the original document demand Magistrate Judge Almond determined to be too broad. If or when plaintiffs serve an amended document request that, consistent with Magistrate Judge Almond's May 10 Order, does not seek documents the Court already has ruled plaintiffs are not entitled to seek and "targets and more particularly identifies the specific documents sought and/or the specific documents not sought," defendants are ready to undertake a search for such documents.

Dated: Providence, Rhode Island
July 15, 2005

ADLER POLLOCK & SHEEHAN P.C.

By: ______________________
John A. Tarantino (#2586)
Paul V. Curcio (#1965)

One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (Pro Hac Vice)
Aric H. Wu (Pro Hac Vice)
Anthony J. Mahajan (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of July, 2005, I caused a true copy of the within to be served by first-class mail, postage prepaid, to:

*Counsel for Lead Plaintiffs*:

William M. Kolb, Esq.
Law Offices of William M. Kolb, LLC
1 Ship Street
Providence, RI 02903

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Ave., Suite 1850
Chicago, IL 60603

Ira M. Press, Esq.
Kirby, McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, NY 10022

*Co-Counsel for Defendants*:

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166

Shelley R. Zimmerman

GIBSON, DUNN & CRUTCHER LLP
LAWYERS
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

amahajan@gibsondunn.com

July 18, 2005

Direct Dial
(212) 351-2315

Fax No.
(212) 351-4035

Client No.
C 90016-00278

**VIA FACSIMILE**

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue
Chicago, Illinois 60603

Ira Press, Esq.
Kirby McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, New York 10022

Re: *Rosen v. Textron, Inc., C.A. 02-190S*

Dear Michael and Ira:

As you know, the fact discovery cut-off date is less than two months away. To date, plaintiffs have failed to identify by name a single witness they intend to depose. As a courtesy to the witnesses, please advise at your earliest convenience whom plaintiffs intend to depose so that we can try to identify possible dates for depositions. In addition to the witnesses, we also have vacation schedules that we would like to finalize. While we do not think depositions should be held up for any issues on plaintiffs' document demand no. 16, we would like to resolve any issues as soon as possible and are available for a meet and confer today. If you are not available today, please let us know when would be the earliest convenient time for you to discuss this week.

Finally, please also advise whether plaintiffs will provide an unredacted document production to defendants or whether plaintiffs are unwilling to provide an unredacted document production to defendants absent motion practice. As you know, plaintiffs'

GIBSON, DUNN & CRUTCHER LLP



production of LP 1 – LP 2105 and WS 1 – WS 224 was heavily redacted.

Very truly yours,

Anthony J. Mahajan

cc: William Kolb, Esq. (via fax: 401-272-9020)
John Tarantino, Esq. and Paul Curcio, Esq. (via fax: 401-751-0604)

FUTTERMAN & HOWARD, CHTD.
ATTORNEYS AT LAW
SUITE 1850
122 SOUTH MICHIGAN AVENUE
CHICAGO, ILLINOIS 60603
(312) 427-3600 FAX (312) 427-1850

July 29, 2005

**Via Facsimile 212-351-5254**
**<u>and First Class Mail</u>**

Mitchell A. Karlan, Esq.
Aric Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Ave.
47th Floor
New York, NY 10166

Re: *Textron*

Gentlemen:

To follow up on some items from our conference yesterday:

First, you have represented that you have now made a complete production of all documents compelled by the Court's orders of May 4 and 10, 2005.

Second, you refused to produce any documents responsive to our amended request number 16 concerning Osprey operational documents, which we served in accordance with the Court's Order of May 10, 2005. We will file a motion to compel compliance.

You offered to stipulate that Textron's finance department was not provided with information concerning problems with the Osprey, and we agreed to consider such a stipulation. Please give us the exact wording of your proposed stipulation.

Third, we stated that we want to schedule the outstanding Rule 30(b)(6) deposition(s) concerning Textron's accounting (noticed on March 9, 2005), during the weeks of August 8 or 15. Ernst & Young has informed Kirk Chapman that they are in the process of identifying a witness for the week of August 8. You stated that Mr. Yates is probably the most knowledgeable person for that deposition, but that he is unavailable until September 13. Ira Press will work with you further on deposition scheduling for Textron representatives.

Finally, with respect to documents concerning class certification issues, you refused to give any reason as to why we should undergo the burden of producing duplicative documents, such as statements showing the same securities trading that was reported in the documents already produced. Nevertheless, we are retrieving those documents and anticipate producing them.

Sincerely,

Michael I. Behn

MIB:da

cc: John Tarantino, Esq.
Paul Curcio, Esq.

[G:\DA\WPDOCS\Textron\Karlan.Wu.Mahajan.008.wpd]

GIBSON, DUNN & CRUTCHER LLP
LAWYERS
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

amahajan@gibsondunn.com

August 2, 2005

Direct Dial
(212) 351-2315

Fax No.
(212) 351-4035

Client No.
C 90016-00278

**VIA FACSIMILE**

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue
Chicago, Illinois 60603

Re: *Rosen v. Textron, Inc., C.A. 02-190S*

Dear Michael:

We write to respond to your letter dated July 29, 2005.

During our telephonic meet and confer on July 28, 2005, you declined our offer to meet with your consulting expert to discuss the relevance of the items sought in your *expanded* amended document demand no. 16. By way of example, we sought an explanation of what possible relevance "rosters or lists that identify personnel working on the V-22 program" had to the disputed third quarter 2001 accounting adjustment. Since you were unable to articulate the relevance of those documents in any non-conclusory fashion and were unwilling to put your consulting expert on the phone to explain the relevance of such documents, we simply have no understanding of what you believe the relevance of such documents to be. In an attempt to move the discussion forward, we offered to stipulate that "rosters or lists that identify personnel working on the V-22 program" were not considered in connection with the disputed third quarter 2001 accounting adjustment. We also asked you to identify, out of the more than 30 subparts of the expanded document demand, the three categories of documents you believed to be most relevant. Your co-counsel in Chicago indicated that plaintiffs believed all subparts to be equally relevant, so that no subpart was any more or less relevant than subpart v, which seeks "rosters or lists that identify personnel working on the V-22 program." Based on that comment and your unwillingness to put your consulting expert on the

GIBSON, DUNN & CRUTCHER LLP



phone to explain the relevance of any of the documents sought in the expanded document demand, it became apparent that no progress would be made. If you are prepared to articulate the relevance of the documents sought in plaintiffs' expanded amended document demand in some non-conclusory fashion, we are willing to listen. If, however, you continue to insist, without more, that all the documents sought in the expanded amended document demand are relevant, there is nothing further to discuss.

We have just received this afternoon Ira's letter regarding six of the eight Textron or Bell representatives whom plaintiffs wish to depose. Per Ira's conversation with Mitch today, we did not receive Ira's fax transmission of the letter on Friday. We will reach out to these individuals and get back to you as soon as practicable with potential deposition dates. Please advise us promptly of the identity of the other two Textron or Bell representatives plaintiffs wish to depose. As we repeatedly have told you for several weeks now, we need to know who plaintiffs will want to depose to try to line up deposition dates. We note that Ira's letter suggests that plaintiffs will seek to take eleven depositions of Textron or Bell representatives (Messrs. Stinson, Murphey, Campbell, Janitz, and French, the 30(b)(6) deponent, plus six as yet unnamed individuals). Paragraph 10 of the Court's Discovery Scheduling Order limits plaintiffs to depositions of "not more than eight representatives of Textron and Bell Helicopter." Ira's letter also suggests that plaintiffs are unaware of the identity of the 30(b)(6) deponent. Your letter of July 29, 2005 acknowledges that defendants have, both by e-mail and during the telephonic meet and confer, already identified Richard Yates as the 30(b)(6) deponent and confirmed with plaintiffs the date of Mr. Yates' deposition.

Finally, please provide plaintiffs' long overdue production of unredacted documents by no later than Thursday, August 4. You already have delayed production by several weeks.

Very truly yours,

Anthony J. Mahajan

cc: Ira Press, Esq. (via fax)
William Kolb, Esq. (via fax)
John Tarantino, Esq. and Paul Curcio, Esq. (via fax)

**Wu, Aric H.**

**From:** Karlan, Mitchell A.
**Sent:** Friday, August 05, 2005 8:25 AM
**To:** 'Dbershad@milbergweiss.com'
**Subject:** Textron

Dear David:
We cannot agree to a ninety day extension of the time for completing fact depositions. We think that all depos must be noticed by the end of august and taken by october 7, which is an extension of a little over 20 days. To the extent that individual witnesses cannot appear until slightly after october 7 because of their personal schedules, obviously we won't be unreasonable about that.

If kirk calls me today we can try again to resolve the problems with request 16. Kirk should review the papers before calling.

All the best for next week. I am sure it will bring great things.

Mitch

FUTTERMAN & HOWARD, CHTD.
ATTORNEYS AT LAW
SUITE 1850
122 SOUTH MICHIGAN AVENUE
CHICAGO, ILLINOIS 60603
(312) 427-3600 FAX (312) 427-1850

August 9, 2005

Mitchell A. Karlan, Esq.
Aric Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Ave., 47th Floor
New York, NY 10166

Re: *Textron*

Gentlemen:

I understand from my colleagues that Textron has reconsidered its position not to produce any operational documents identified in Plaintiffs' Amended Request No. 16. In the spirit of cooperation and in an effort to break through our impasse, we have selected ten categories of documents out of the thirty-three sub-parts of the Amended Request that plaintiffs would like Textron to produce immediately. They are as follows:

a.i. all reports or other documents concerning the impact of the crashes of V-22 Aircraft on April 8, 2000, and December 11, 2000, on the master program schedules and production schedules of EMD contract no. N00019-93-C-0006, LRIP contract numbers N00019-96-C-0054, N00019-96-C-0054-2, N00019-96-C-0054-3, and N00019-99-C-1090 for the V-22 Program;

e. all documents concerning the V-22 Program "mission capable" rates (e.g., "MC" or "FMC" rates), including all documents that discuss or analyze whether the V-22 Aircraft met or failed to meet any "mission capable" rates and the cost of all redesign efforts undertaken to improve said rates;

f. all documents discussing or reflecting the reasons why anticipated mission capable rates were not met;

j. all documents that explain why the actual flight hours per month and sorties per month of the V-22 Aircraft differed from the actual flight hours per month and sorties per month projections;

m. all documents that reflect discussions or analysis of variances from the V-22 Program test plans and the impact these variances were projected to or actually had on the V-22 program;

o. all documents concerning any proposed or actual grounding or temporary cessation of V-22 Aircraft flights as these actions impacted the maintenance and reliability, operational effectiveness and the effect of all redesign efforts on operations, delay of the flight test program, delay of going into production and the increase in cost to the company resulting from these delays;

r. all documents that set forth the planned repairs of all V-22 systems using the metric maintenance man hours to flight hours. For the purposes of this request, the term "V-22 systems" includes, but is not limited to, (1) the air frame; (2) flight controls; (3) engines; (4) weapons systems; (5) fuel; (6) cargo handling; (7) hydraulics; and (7) avionics;

s. all documents that set forth changes to the planned repairs identified in materials produced pursuant to request "r";

u. all headcount charts for the V-22 test program, both planned and actual; and

w. all problem analysis reports for the V-22 program.

These requests are subject to the instructions, definitions and relevant time period included in the original Amended Request No. 16. Further, plaintiffs do not waive their right to seek production of other documents whether or not identified in the Amended Request No. 16.

Kindly let me know, in writing, by 5:00 p.m. CST on August 10, 2005, whether or not defendants will produce these materials. If I do not receive an affirmative response by then, with Textron's agreement to produce the documents within ten business days, I will assume we are at an impasse and move to compel production of all documents requested in the Amended Request No. 16.

If you have any questions, do not hesitate to contact me or Michael Jaskula (312-616-4480).

Sincerely,

Michael I. Behn

MIB:da

cc: John Tarantino, Esq.
Paul Curcio, Esq.
William Kolb, Esq.

[G:\DA\WPDOCS\Textron\Karlan.Wu.Mahajan.009.wpd]

**GIBSON, DUNN & CRUTCHER LLP**
LAWYERS
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com
amahajan@gibsondunn.com

August 10, 2005

Direct Dial
(212) 351-2315

Fax No.
(212) 351-4035

Client No.
C 90016-00278

**VIA FACSIMILE**

Michael Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue
Chicago, Illinois 60603

Re: *Rosen v. Textron, Inc., C.A. 02-190S*

Dear Michael:

We write to respond to your letter dated August 9, 2005.

*First*, please stop with the revisionist history. Defendants did not "reconsider" any position. Instead, as we offered during the parties' telephonic meet and confer on July 28, 2005, defendants were willing to meet with plaintiffs' consulting expert to discuss plaintiffs' *expanded* amended document demand no. 16 in an attempt to identify specific documents for production. You declined our offer. Moreover, your co-counsel in Chicago indicated that plaintiffs believed all subparts of plaintiffs' expanded document demand to be equally relevant, so that no subpart was any more or less negotiable. Based on that comment and your unwillingness to explain the relevance of any of the documents sought in the expanded document demand in a non-conclusory fashion, no progress was made during the meet and confer. In a letter dated August 2, 2005, we reiterated our original offer to meet with your consulting expert. *See* 8/2/05 Letter to Michael Behn. On August 4, 2005, your co-counsel at Milberg Weiss asked for another meet and confer on plaintiffs' expanded document demand. We immediately made ourselves available. *See* 8/5/05 E-mail to David Bershad. We never heard from you. Instead, late yesterday, August 9, 2005, we received your letter demanding that we acquiesce "in writing, by 5:00 p.m. CST on August 10, 2005" to the latest demand that you spent the last two weeks devising in the wake of the parties' telephonic meet and confer on July 28, 2005.

Michael, we will not respond to arbitrary deadlines that you unilaterally impose. To put the particularly unreasonable nature of your demand in perspective, here is a chronology of the events to date. On May 10, 2005, Magistrate Judge Almond issued his order on plaintiffs' original document demand no. 16. In his order, Magistrate Judge Almond directed plaintiffs to serve a new document request that "targets and more particularly identifies the specific documents sought and/or the specific documents not sought." Plaintiffs waited until June 16, 2005, or more than a month later, to serve their new document request. Contrary to Magistrate Judge Almond's admonition that plaintiffs serve a more targeted document request, plaintiffs served an enormous amended document demand that was nearly 10 pages long, consisted of more than 30 subparts and greatly *expanded* the scope of documents sought. It was patently improper for plaintiffs to have propounded an amended document demand that is even broader than the original document demand that Magistrate Almond determined to be too broad. On July 15, 2005, defendants timely served their responses and objections to the expanded document demand. On July 18, 2005 defendants promptly requested a meet and confer. *See* 7/18/05 Letter to Michael Behn. As an accommodation to your travel schedule, the meet and confer was ultimately held 10 days later on July 28, 2005. On August 4, 2005, one week after the meet and confer, your co-counsel at Milberg Weiss asked for another meet and confer. We promptly made ourselves available, but never heard from you. *See* 8/5/05 E-mail to David Bershad. Instead, as became apparent after we received your letter late yesterday, August 9, 2005, you had spent the last couple of weeks devising a new position. Rather than ask for a response in a reasonable time frame, you threatened us and demanded that defendants acquiesce "in writing, by 5:00 p.m. CST on August 10, 2005."

*Second*, we do not understand what plaintiffs' supposed "compromise" is. You demand immediate production of 10 broad categories of documents and then slip in that "plaintiffs do not waive their right to seek production of other documents whether or not identified in the Amended Request No. 16." That is no "compromise." Moreover, despite your claim that plaintiffs are now acting "in the spirit of cooperation and in an effort to break through our impasse," it appears that you already have decided to file a motion to compel regardless of whether or not defendants agree "in writing, by 5:00 p.m. CST on August 10, 2005" to acquiesce to your demand that defendants immediately produce 10 broad categories of documents. Indeed, yesterday (*i.e.*, before your arbitrary deadline that defendants acquiesce by today), you represented to the Court that plaintiffs would in fact be filing a motion to compel on amended document demand no. 16. *See* Plaintiffs' Second Motion to Amend Discovery, dated August 9, 2005, at 4. Please clarify what plaintiffs' "offer" is. As articulated in your letter, we understand that you want defendants to immediately produce 10 broad categories of documents, without any non-conclusory explanation of their relevance, and that plaintiffs also will have the option of filing a motion to compel on the remaining 23 subparts of amended document demand no. 16. Is that your supposed "compromise"?

Even putting aside your attempt to reserve for plaintiffs the option to file a motion to compel on the remaining 23 subparts of amended document demand no. 16, we note that plaintiffs' demand that defendants acquiesce to the production of 10 broad categories of documents can hardly be characterized as a "compromise." Plaintiffs' original document demand no. 16 contained 7 subparts. Magistrate Judge Almond determined that demand to be too broad and directed plaintiffs to serve a more targeted demand. Rather than heed Magistrate Almond's order, plaintiffs served an enormous document demand with 33 subparts. Just because plaintiffs contravened Magistrate Judge Almond's order and served an *expanded* document demand with 33 subparts does not mean that your demand that defendants immediately produce 10 broad categories of documents is a "compromise." As noted above, the original document demand that Magistrate Judge Almond determined to be too broad contained 7 subparts. To further illustrate, subparts e and f of the amended document demand are even broader in scope than subpart c of the original document demand. Similarly, please explain how subpart u – plaintiffs' demand for "all headcount charts for the V-22 test program" – concerns documents relating to "the operational effectiveness, suitability or safety of the V-22 Aircraft." There was no such subpart that was even remotely similar in the original document demand and just because you stuck it in as a subpart in the new document demand does not make it a legitimate request.

Michael, it is our sincere hope and desire that the parties can reach a mutually acceptable agreement on amended document demand no. 16. We hope that is your sincere hope and desire as well. To that end, we are evaluating your latest proposal with our clients so that we can have a reasonable and informed discussion with you as soon as practicable. We hope that you will consider the issues that we have preliminarily identified in this letter so that you also will be in a position to have a reasonable and informed discussion. We also ask that you think about ways in which you can help better target the specific documents sought, per Magistrate Judge Almond's May 10 Order, so as to avoid unnecessarily burdening defendants with expensive and time-consuming document searches. To keep things moving forward, please let us know your availability next week for a telephonic meet and confer.

Thank you for your attention.

Very truly yours,

AJM

Anthony J. Mahajan

cc: Ira Press, Esq. (via fax)
William Kolb, Esq. (via fax)
John Tarantino, Esq. and Paul Curcio, Esq. (via fax)

FUTTERMAN & HOWARD, CHTD.
ATTORNEYS AT LAW
SUITE 1850
122 SOUTH MICHIGAN AVENUE
CHICAGO, ILLINOIS 60603
(312) 427-3600 FAX (312) 427-1850

August 12, 2005

**Via Facsimile 212-351-6219**
**and First Class Mail**

Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Ave.
47th Floor
New York, NY 10166

Re: *Textron*

Dear Anthony:

I am writing in response to your letter this week concerning the operational documents.

The Court has now twice ordered defendants to produce operational documents and, with the discovery deadline a month away, defendants have produced no operational documents. Nor have defendants agreed to produce operational documents, or agreed to an extension of time to allow for the continuing dialog you apparently envision. These withheld operational documents are needed to prepare for the depositions currently scheduled for September and October. Consequently, we have no choice but to seek the Court's assistance, and will file an appropriate motion shortly.

That being said, we remain willing to continue our attempts to reach agreement on the defendants' production of operational documents. Per your suggestion that we confer again next week, we are available for a call on Wednesday, August 17, 2005 at 3:30 EST, 2:30 CST.

I will be out of the office the remainder of the day, as well as Monday and Tuesday. In my absence, please contact Ira Press or Will Thomas (of this office).

Sincerely,

Michael J. Behn

MJB:da

cc: William Kolb, Esq. (via fax)
John Tarantino, Esq.
Paul Curcio, Esq. (via fax)

[G:\DA\WPDOCS\Textron\Mahajan.018.wpd]