UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S<br><br>Judge William E Smith<br><br>Class Action<br><br>JURY TRIAL DEMANDED |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON, INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

**SUPPLEMENTAL DECLARATION OF IRA M. PRESS IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

IRA M. PRESS, declares as follows under the penalty of perjury:

1. I am a member of the law firm of Kirby McInerney & Squire, LLP, co-lead counsel for the class. As such, I have knowledge of the matters set forth herein. I make this declaration in order to supply information requested by the Court at the May 9, 2006 hearing for final approval of the settlement and the award of counsel fees in this action.

**Counsel's Expenses**

2. At the hearing, the Court requested assurances that the expenses for which counsel seeks reimbursement are all actual costs incurred by counsel and do not include a mark up or profit on the costs incurred. *See* Transcript of May 9, 2006 Hearing ("Hearing"), a copy of which is annexed hereto as Exhibit A, p. 34 ("Hearing Tr.").

3. Attached hereto as Exhibit B is a supplemental affidavit of Michael I. Behn filed on behalf of Behn & Wyetzner, Chtd., describing the expenses incurred by his firm.

4. Attached hereto as Exhibit C is a supplemental affidavit of Ronald L. Futterman, describing the expenses incurred by his firm, Futterman & Howard, Chtd.

5. Annexed hereto as Exhibit D is a supplemental declaration of Kirk E. Chapman describing the expenses incurred by Milberg Weiss Bershad & Schulman, LLP and providing further discussion of the work performed by that firm.

6. Annexed hereto as Exhibit E is a supplemental affidavit from William Kolb providing further discussion of the expenses incurred by the Kolb firm.

7. Annexed hereto as Exhibit F is the supplemental affidavit of Pamela E. Kulsrud of my firm providing further discussion of the expenses incurred by Kirby McInerney & Squire, LLP.

8. As the attached affidavits confirm, most of the collective litigation expenses identified in counsel's May 2, 2006 submission were simply pass-throughs of expenses that were actually incurred by counsel.

9. For example, as detailed more completely in the supplemental affidavits, expenses recorded for accounting and damages experts ($47,422.75), consultants/investigators ($31,481.10); delivery fees ($4,197.02); mediation fees ($4,100.00); court reporters and deposition

transcripts ($2,662.55); witness and filing fees ($2,055.91) and notices ($1,503.83) are merely requests for reimbursement of expenses invoiced to and paid out of pocket by plaintiffs' counsel during the litigation to independent vendors such as experts (Schechtman Marks & Devor and FMA), consultants (including Southerland & Associates), courier services (Federal Express, Airborne, UPS), mediators (Hon. Nicholas Politan), court reporting services (including Spherion/Veritext), and the U.S. District Court. *See* Ex. B, p. 2; Ex. C, p. 2; Ex. D, p. 2; Ex. E, p. 2 and Ex. F, pp. 2-3.[1]

10. The cost entries identified for travel, hotel and meals ($40,233.38) are similarly pass-throughs of payments made by counsel for airfare or other travel expenses and lodging and meals when traveling for hearings or depositions and for out-of-pocket expenses incurred by counsel for transportation and dinner when working late nights in order to meet deadlines for the filing of briefs, discovery requests, discovery responses or pleadings. *See* Ex. B, ¶1(e); Ex. C, ¶¶ 1(h)-(j); Ex. D, ¶5; Ex. E, ¶1(d) and Ex. F, ¶1(b).

11. The costs entry of $601.69 for word processing overtime (incurred by Milberg Weiss) has been removed from the application. *See* Ex. D, ¶6.

12. Of the $79,600.44 requested for photocopy and fax, $36,634.71 represents invoices billed to and paid by plaintiffs' counsel to third parties (outside copying sources or subpoenaed witnesses themselves) in order to copy the hundreds of thousands of pages of documents that were produced during discovery. The remaining $42,965.73 in costs represents costs incurred by each of the firms as described more fully in the supplemental affidavits of Ronald L. Futterman (Ex. C, ¶1(b)) Kirk E. Chapman (Ex. D, ¶7) and Pamela E. Kulsrud (Ex. F, ¶1(g)). In addition, as

---

1 Counsel had previously sought reimbursement of $4,530.19 for delivery charges. As detailed more fully in the Supplemental Affidavit of Kirk E. Chapman (Ex. D, ¶ 8), Milberg Weiss has reduced its delivery fees by $333.17 (from $879.24 to $546.07), upon further review.

explained in Exhibit D, ¶¶6-8, Milberg Weiss has reduced the amounts it seeks for reimbursement of photocopying charges by $5,403.45 (from $19,150.45 to $13,747.00), thereby reducing the overall expense request by that amount. Attached as Exhibit G is a chart reflecting the amended expense application for plaintiffs' counsel, by firm and in the aggregate.

13. The electronic document research entry represents costs incurred by counsel for document retrieval services (online or otherwise) and costs for legal research services such as Westlaw and LEXIS. The document retrieval portion is simply a pass-through of costs incurred by counsel in the course of retrieving specific documents in connection with this case. The LEXIS and Westlaw services are billed to counsel at a flat rate on a monthly basis. Counsel allocates these bills among cases based on a pro rata basis based on the percentage of the attorney time at the firm allocated to a given matter during the relevant time period (*see* Kulsrud Decl., ¶1(h)) or the proportion of the firm's Westlaw or LEXIS activity related to the suit (*see* Futterman Decl., ¶1(g)). The law firm of William Kolb did not submit any electronic legal research charges for reimbursement, and the Behn & Wyetzner firm submitted just $37.25 of such charges.

14. As the attached Kulsrud declaration reflects, following the hearing, upon further review of the Westlaw charges, Kirby McInerney & Squire, LLP determined that the correct charge for Westlaw here should have been $8,622.18, rather than the $35,381.46 reflected in the previous submission. Similarly, Milberg Weiss has reduced its electronic research charges by $471.70 (from $9,943.17 to $9,471.47). Accordingly, the total electronic research charges (for all counsel) has been reduced to $27,230.98. *See* Exhibit G.

15. The postage charge submitted by Futterman & Howard and William Kolb ($183.33) represents actual costs. Ex. C, ¶¶ 1(h)-(j); Ex. E, ¶1(c). While Kirby McInerney & Squire, LLP is aware of the total expenditures by their offices for postage on an annual or monthly basis for

postage, those expenditures are not tracked to specific cases. On fee applications, the postage charges are calculated on a pro rata basis based on the relative percentage of the firms' lodestar during the relevant time attributable to the matter in question. *See* Exhibit F, ¶2(j). The law firms of Behn & Wyetzner, Chtd. and Milberg Weiss Bershad & Shulman LLP did not apply for any postage reimbursement. *See* Exhibit G.

**Reductions in Expense applications**

16. In reviewing the costs applied for, KMS has determined that it is appropriate to reduce the total amount it is seeking for reimbursement of expenses to $127,968.92, from the $154728.20 previously requested. *See* Ex. F, ¶1 (g).

17. Milberg Weiss has determined that it is appropriate to reduce the total amount it is seeking for reimbursement of expenses to $51,251.24 from the $58,061.25 previously requested. *See* Ex. D, ¶ 3 and at Ex. 1 thereto.

18. In summary, plaintiffs' counsel are now seeking reimbursement of in total out of pocket costs in the amount of $236,959.80. *See* Exhibit G.

**Milberg Weiss' Role in this Suit**

19. The declaration concurrently submitted by Kirk E. Chapman of the Milberg Weiss law firm describes the work performed by Milberg Weiss during this litigation. *See* Ex. D, ¶¶10-15. Virtually all of this work was done at the direction of plaintiffs' lead counsel. The only exception is the work done by Milberg Weiss at the outset of the litigation prior to appointment of lead counsel. That work too was necessary for this action, as it included, *inter alia*, development of the initial theory of the suit.

20. The work performed by the Milberg Weiss law firm was necessary and not duplicative. There was extensive motion practice during the course of this action. Most of the

motions necessitated multiple rounds of briefing. In each case, defendants' briefs had to be reviewed and their authorities analyzed. This was followed by legal research and writing by plaintiffs. Furthermore, during the course of discovery, hundreds of thousands of pages of documents that were produced by defendants and by third parties. All had to be reviewed. Moreover, the document review function was not simple. Following the Court's ruling on the motion to dismiss, the only actionable misrepresentations for which plaintiffs' counsel could pursue recovery related to somewhat arcane concepts of revenue and expense recognition under program accounting principles. Accordingly, the document review required careful examination of complex accounting-related documents that required review and analysis by experts. Had Milberg Weiss not assisted with any of the foregoing, the same work would have had to have been performed by plaintiffs' lead counsel. As a result, counsel's overall lodestar would not have been materially, if at all, lower.

21. An example of Milberg Weiss's contribution is seen in the role of Jorge A. Amadore of Milberg Weiss. Mr. Amadore is an attorney and a C.P.A. As such, his expertise in reviewing and analyzing many of the accounting documents was invaluable. Mr. Amadore's presence and contribution to the case is a large part of the reason why the out-of-pocket expenditures by counsel for outside accounting experts were relatively low, a fact observed by the Court at the May 9, 2006 hearing. (*See* Hearing Tr. at p. 10.)

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 22, 2006

[signature]
IRA M. PRESS

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S<br><br>Judge William E Smith<br><br>Class Action<br><br>JURY TRIAL DEMANDED |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

**SUPPLEMENTAL AFFIDAVIT OF MICHAEL I. BEHN**
**IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS**
**FILED ON BEHALF OF BEHN & WYETZNER, CHARTERED**

STATE OF ILLINOIS )
) ss.
COUNTY OF COOK )

MICHAEL I. BEHN, being duly sworn, states:

1. I am a principal with the law firm of BEHN & WYETZNER, CHARTERED ("B&W"). I submit this supplemental affidavit in response to the Court's inquiries concerning the methodology for identifying and charging expenses associated with the above-captioned

case, and whether there was any "premium billing" associated with expenses for which reimbursements is sought. B&W follows the policy of attempting to identify specific charges associated with each case. None of the categories of expenses identified in Exhibit 2 to the Behn Affidavit dated April 17, 2006, represents a profit center. Following is an explanation of how the firm identifies and charges costs for each of the categories of expenses in Exhibit 2 to the Behn Affidavit.

a. Chicago Messenger. This represents the actual billed expenses.

b. Fedex. This represents the actual billed expenses.

c. UPS. This represents the actual billed expenses.

d. Westlaw. The Firm has a monthly plan with Westlaw. The service provider charged a set monthly fee for defined searches. In connection with each bill, a breakdown was provided of how much time was associated with particular client matters for searches within and outside the defined scope. Westlaw provided a "standard charge" for the includable time. The Firm took the total "standard charge" for each monthly billing period and determined the client's total. There are no extra charges for non-included searches. The Firm, therefore, made every reasonable effort to allocate the true cost incurred for electronic legal research to the client on whose behalf the work was done.

e. Travel. This represents actual billed expenses. Travel expenses include airfare, lodging, local travel and meals. Firm personnel are not permitted to fly First Class unless circumstances do not permit otherwise. Firm personnel usually advance the costs of such travel and are reimbursed based on actual invoices, credit card slips or statements, and receipts

submitted.

f. Expert. This charge represents actual expenditures for investigators and other outside consultants utilized in connection with the case.

2. The Firm can supply supporting computer billing records and invoices regarding the charges reflected in Exhibit 2 to the initial Behn Affidavit should the Court so request.

Further affiant sayeth not.

Michael I. Behn

Sworn to before me this
19th day of May, 2006.

Notary Public

| EXHIBIT 2 | |
|---|---|
| **Behn & Wyetzner, Chartered**<br>**Expenses** | |
| | |
| **Expense** | **Total** |
| | |
| Chicago Messenger | $ 15.50 |
| Fedex | $ 61.59 |
| Travel Expenses | $ 1,906.33 |
| UPS | $ 21.83 |
| Westlaw | $ 37.25 |
| Expert | $ 3,750.00 |
| | |
| **Grand Total** | **$5,792.50** |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S<br><br>Judge William E Smith<br><br>Class Action<br><br>JURY TRIAL DEMANDED |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

**SUPPLEMENTAL AFFIDAVIT OF RONALD L. FUTTERMAN IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS FILED ON BEHALF OF FUTTERMAN & HOWARD, CHARTERED**

STATE OF ILLINOIS )
) ss.
COUNTY OF COOK )

RONALD L. FUTTERMAN, being duly sworn, states:

1. I am a principal with the law firm of FUTTERMAN & HOWARD, CHARTERED ("F&H"). I submit this supplemental affidavit in response to the Court's inquiries concerning the methodology for identifying and charging expenses associated with the

above-captioned case, and whether there was any "premium billing" associated with expenses for which reimbursements is sought. F&H follows the policy of attempting to identify specific charges associated with each case. None of the categories of expenses identified in Exhibit 2 to the Futterman Affidavit dated April 5, 2006, represents a profit center. Following is an explanation of how the firm identifies and charges costs for each of the categories of expenses in Exhibit 2 to the Futterman Affidavit.

a. Document filings. This represents the total of actual payments made to outside parties that copied documents for use in this case. Among the vendors are Pacer (for printing court documents accessed on online), Kinko's (used for large copying jobs) and other entities, such as the SEC that charged for production of documents in response to subpoenas.

b. Xeroxing. The firm's photocopy machine tracks the number of copies made for each case. The firm charges 22 cents per page for each copy made. That charge is comprised of the leasing cost associated with the machine, the maintenance contract, paper, ink and other supplies and associated overhead (based on allocations of rent, electric, the clerk's salary and other similar general overhead charges). The firm has not attempted to adjust overhead charges for inflation during at least the past two years.

c. Consultants. This charge represents actual expenditures for investigators and other outside consultants utilized in connection with the case.

d. Witness fees and subpoenas. This represents the actual expense.

e. Deliveries. This represents the actual billed expense.

f. Court reporters. This represents the actual billed expense.

g. Westlaw/Lexis. For part of the case, the Firm had a monthly plan with Lexis which was replaced by a monthly plan with Westlaw. Both plans worked in similar fashion. The service provider charged a set monthly fee for defined searches. In connection with each bill, a breakdown was provided of how much time was associated with particular client matters for searches within and outside the defined scope. Searches outside the defined scope (e.g., a data base infrequently accessed and, therefore, not included in the monthly package) caused specific extra charges to be incurred, but these were attributable to specific matters or cases during the month. Both Lexis and Westlaw provided a "retail value" for the includable time. The Firm took the total of all "retail value" for each monthly billing period and determined each client's percentage of that total. The client percentage was then applied to the set monthly charge to allocate the set monthly charge among various clients. Extra charges for non-included searches were allocated to the appropriate client at the actual charge. The Firm, therefore, made every reasonable effort to allocate the true cost incurred for electronic legal research to the client on whose behalf the work was done.

h. Travel. This represents actual costs. Firm personnel are not permitted to fly First Class unless circumstances do not permit otherwise. Firm personnel usually advance the costs of such travel and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted.

i. Lodging. This represents actual costs. Firm personnel generally attempt

to stay at reasonably priced hotels that are close to their intended destinations. Firm personnel usually advance the costs of such lodging and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted.

j. Meals. This represents actual expenditure. Firm personnel usually advance the costs of such meals and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted.

k. Long distance telephone. This represents actual expenditures, including actual charges billed for fax transmissions.

l. Postage. This represents actual expenditures.

2. The Firm can supply supporting computer billing records and invoices regarding the charges reflected in Exhibit 2 to the initial Futterman Affidavit should the Court so request. After the monthly totals taken off the photocopy machine are entered into the firm's billing system, the Firm generally does not retain the clerk's handwritten forms that are used to collect photocopy totals for billing purposes.

Further affiant sayeth not.

Ronald L. Futterman

Sworn to before me this 18th day of May, 2006.

Notary Public

"OFFICIAL SEAL"
PATRICE A. CARDEN
Notary Public, State of Illinois
My Commission Expires 07/24/2006

G:\PC\Textron\Affidavit Suppl RLF.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S<br><br>Judge William E Smith<br><br>Class Action<br><br>JURY TRIAL DEMANDED |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

**SUPPLEMENTAL DECLARATION OF KIRK E. CHAPMAN IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS FILED ON BEHALF OF MILBERG WEISS BERSHAD & SCHULMAN LLP AND PLAINTIFFS' COUNSEL**

I, Kirk E. Chapman, under penalty of perjury hereby declare as follows:

1. I am a partner of the law firm Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"). I have personal knowledge of the matters set forth herein. I submit this supplemental affidavit in further support of Milberg Weiss' and plaintiffs' counsel's petition for an award of attorneys' fees andexpenses.

2. At the Final Settlement Hearing held on May 9, 2006, the Court asked plaintiffs' counsel to review their individual applications for reimbursement of disbursements to ensure that their requested expenses did not include any premium billing or administrative add-ons. The Court also directed that where the original request contained premium billing or an administrative add-on, plaintiffs' counsel should file an amended application for expenses removing such charges or add-ons.

3. Milberg Weiss, at my direction, has performed the Court's requested examination. Attached hereto as Exhibit 1 is a chart of Milberg Weiss' revised expenses reflecting the results of this review. As detailed in Exhibit 1, Milberg Weiss now requests reimbursement of $51,251.24 in expenses. This figure is listed at the bottom of the chart under the column headed New Cost.

4. Pursuant to the Court's directive, Milberg Weiss' current expense request excludes all premiums or administrative add-ons -- it reflects the actual cost to Milberg Weiss for its disbursements.

5. With respect to the following categories of expenses, the amount currently requested is the same as that requested in Milberg Weiss' initial request for reimbursement of expenses: *Consultants/Investigators*; *Travel, Hotel, Meals*; *Telephone*; *Notices*; *Witness Fee & Filing Fees*. Our review revealed that the amount originally requested in each of these categories represents the actual expenditure or cost billed to Milberg Weiss from outside vendors and, thus, no reduction was necessary.

6. With respect to the following categories, Milberg Weiss has reduced the amount for which it requests reimbursement: *Photocopy & Fax*; *Electronic Legal Research*; *Delivery*;

and *Word Processing Overtime*. The amount by which we reduced each of these categories of disbursements is described in the chart attached hereto as Exhibit 1.

7. The amount sought by Milberg Weiss for *Photocopying & Faxes* reflects both invoices from outside copying services and charges for in-house copying and faxing. We did not reduce the amount requested for outside copying services because it represents Milberg Weiss' actual paid cost. We did reduce the amount requested for in-house copying and faxing to $.15 per page from $.25 per page and $1.00 per page, respectively. We did so in order to remove any doubt that the amount requested reflects our firm's actual cost. We believe that a charge of $.15 per page may be below our firm's actual cost.

8. We also reduced the amount sought by Milberg Weiss for charges within the categories *Electronic Legal Research* and *Delivery* to reflect the actual cost to the firm of the service provided. In addition, we removed from our request all charges in the category of expense entitled *Word Processing Overtime*. We did so in order to counter any charge that this category is not an expense but rather a part of the firm's overhead.

9. At the Final Settlement Hearing held on May 9, 2006, the Court also requested that Milberg Weiss provide a more detailed explanation of the services our firm performed in connection with the prosecution of this litigation. Described below is a summary of the work my firm has done in this case on behalf of the class.

10. First, Milberg Weiss prepared and filed the first and original complaint against Textron for securities fraud in connection with its accounting for its Osprey aircraft. We filed this first complaint several months after the stock drop which caused the alleged damages in this case. Our original complaint alleged that Textron's financial reports during the Class Period were artificially inflated because the company failed to take timely, appropriate charges for

problems it was experiencing with the Osprey program -- the theory that this Court eventually sustained when it denied defendants' motion to dismiss. Clearly, this provided a benefit to the class because, arguably, without our efforts in bringing the first case these claims may not have otherwise been brought.

11. Second, Lead Counsel asked Milberg Weiss for assistance with the drafting of the Consolidated Amended Complaint. At Lead Counsel's directions, we focused our assistance on the technical accounting issues surrounding the Osprey program. Because of his expertise, I worked on this project with Jorge Amador, an attorney and forensic accountant (he is also a Certified Public Accountant) who works in my law firm. The work we did on the Consolidated Amended Complaint was not duplicative of Lead Counsel's efforts. Similarly, Lead Counsel asked us to help with the drafting of plaintiffs' response to defendants' motion to dismiss. Lead Counsel assigned us to work on certain sections of the response based on our accounting experience and knowledge.

12. Third, Lead Counsel also asked us to help with Class Discovery and the Motion for Class Certification. In this regard, we handled all aspects of discovery and the class motion concerning our client and proposed class representative, William Swartchild III. Milberg Weiss worked on our client's response to defendants' document request; defended his deposition; and drafted those sections of the class certification briefs concerning our client.

13. Fourth, Lead Counsel also asked Milberg Weiss for assistance with Merits Discovery -- a labor intensive, difficult undertaking in a class action securities case such as the present one. Milberg Weiss, among other things, helped draft the initial discovery requests served on defendants and third parties focusing on the accounting issues with which we had specialized expertise. In response to plaintiffs' document requests, Textron produced hundreds

of thousands of pages of documents. Lead Counsel asked us for assistance, which we provided, in the review and analysis of this large production. We also assisted in the review and analysis of third party Ernst & Young's document production. Also, Co-Lead Counsel filed several motions to compel in this case and Lead Counsel asked us to assist with the drafting of certain motions or portions of motions -- non-duplicative of the work that Lead Counsel performed in connection with the various discovery motions filed in this case.

14. Fifth, early on in the case defense counsel itself contacted Milberg Weiss to assist with settlement negotiations. With Co-Lead Counsel's consent, we then worked with defense counsel and Co-Lead Counsel for well over a year in intense, arm's length negotiations that eventually resulted in the current settlement agreement.

15. Overall, I believe the work Milberg Weiss did on behalf of the class was clearly beneficial and non-duplicative of the work performed by Lead Counsel.

DATED: May 22, 2006

Kirk E. Chapman

**EXHIBIT 1**

***Rosen v. Textron*, Case No. Civil Action No. 02-190S**

**MILBERG WEISS BERSHAD & SCHULMAN LLP**

**AMENDED EXPENSE REPORT - Inception through April 18, 2006**

| | | |
|---|---|---|
| **Categories:** | **Old Cost** | **New Cost** |
| Consultants/Investigators | $7,440.00 | $7,440.00 |
| Photocopy & Fax | $19,150.45 | $13,747.00 |
| Travel, Hotel, Meals | $18,004.75 | $18,004.75 |
| Electronic Legal Research | $9,943.17 | $9,471.47 |
| Telephone | $458.12 | $458.12 |
| Delivery | $879.24 | $546.07 |
| Word Processing Overtime | $601.69 | $0.00 |
| Notices | $1,503.83 | $1,503.83 |
| Witness Fee & Filing Fees | $80.00 | $80.00 |
| | | |
| **TOTAL EXPENSES:** | $58,061.25 | $51,251.24 |

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 02-190S |
| Plaintiff, | Judge William E Smith |
| v. | Class Action |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON, | JURY TRIAL DEMANDED |
| Defendants. | |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 02-264S |
| Plaintiff, | |
| v. | |
| TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON, | |
| Defendants. | |

**SUPPLEMENTAL AFFIDAVIT OF WILLIAM M. KOLB IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS FILED ON BEHALF OF LAW OFFICES OF WILLIAM M. KOLB, LLC and KAPLAN & KOLB INC.**

STATE OF RHODE ISLAND )
) ss.
COUNTY OF PROVIDENCE )

WILLIAM M. KOLB, being duly sworn, states:

1. I am a principal with the law firm LAW OFFICES OF WILLIAM M. KOLB, LLC. ("KOLB"). Formerly I was employed by KAPLAN & KOLB INC. ("KAPLAN"). I submit this supplemental affidavit in response to the Court's inquiries concerning the

methodology for identifying and charging expenses associated with the above-captioned case, and whether there was any "premium billing" associated with expenses for which reimbursements is sought. KOLB and KAPLAN follow the policy of attempting to identify specific charges associated with each case. None of the categories of expenses identified in Exhibit 2 to the Kolb Affidavit, dated April 25, 2006, represents a profit center. Following is an explanation of how the firms identify and charge costs for each of the categories of expenses in Exhibit 2 to the Kolb Affidavit.

a. Federal Express. This represents the actual cost.

b. Transcript Fees. This represents the actual billed expense.

c. Postage. This represents actual expenditures.

d. Travel. This represents actual costs. Firm personnel are not permitted to fly First Class unless circumstances do not permit otherwise. Firm personnel usually advance the costs of such travel and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted.

2. KOLB AND KAPLAN can supply supporting computer billing records and invoices regarding the charges reflected in Exhibit 2 to the initial Kolb Affidavit should the Court so request.

Further affiant sayeth not.

William M. Kolb

William M. Kolb

Sworn to before me this
19th day of May, 2006.

Luwendia Antirose

Notary Public
Luwendia Antirose
Term Expires: 8/30/2006
ID#: 50320

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S<br><br>Judge William E Smith<br><br>Class Action<br><br>JURY TRIAL DEMANDED |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

**SUPPLEMENTAL AFFIDAVIT OF PAMELA E. KULSRUD**
**IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS**
**FILED ON BEHALF OF KIRBY McINERNEY & SQUIRE, LLP**

STATE OF NEW YORK )
) ss.
COUNTY OF NEW YORK )

PAMELA E. KULSRUD, being duly sworn, states:

1. I am associated with the law firm of Kirby Mcinerney & Squire, LLP ("KMS" or the "Firm"). As such, I have knowledge of the matters set forth herein. I submit this supplemental affidavit in response to the Court's inquiries concerning the methodology for identifying and charging expenses associated with the above-captioned case, and whether there was any "premium

billing" associated with expenses for which reimbursements is sought. KMS follows the policy of attempting to identify specific charges associated with each case. None of the categories of expenses identified in Exhibit 2 to the Affidavit of Ira M. Press in Support of Petition for Attorneys' Fees and Disbursements Filed on Behalf of Kirby Mcinerney & Squire, LLP, dated May 1, 2006 ("Press Affidavit"), represents a profit center. Following is an explanation of how KMS identifies and charges costs for each of the categories of expenses in Exhibit 2 to the Press Affidavit.

a. Expert Fees. This charge represents actual expenditures for a damages expert (Financial Markets Analysis - $7,500.00) and an accounting expert (Schectman Marks & Devor, P.C. - $39,922.75) utilized in connection with the case. Similarly, KMS' consultant fee ($4,750) represents payment of an invoice for investigative services.

b. Travel, Hotel and Meals. This amount represents actual costs. Of the $13,864.61 included in this category of expenses, $10,432.11 represents travel costs incurred by attorneys and other firm personnel in connection with discovery and/or attendance at court proceedings in this action. Firm personnel are not permitted to fly First Class or Business Class, except where circumstances do not permit otherwise. Firm personnel advance the costs of such travel and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted. All hotel charges, represent actual costs. Firm personnel stay at reasonably-priced hotels that are close to their intended destinations. Firm personnel advance the costs of such lodging and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted. Regarding meals, the charges represent actual expenditures. Firm personnel usually advance the costs of such meals and are reimbursed based on actual invoices, credit card slips or statements, and receipts submitted.

c. Mediation. This represents the actual amount charged by the Hon. Nicholas Politan for services rendered in mediating the settlement.

d. Delivery. This represents the actual billed expense represented by invoices paid to Airborne and Federal Express.

e. Court reporters. This represents the actual billed expenses.

f. Filing fees. This represents the total of invoices from the Clerk of the United States District Court for the District of Rhode Island, in connection with filing fees and an application for admission *pro hac vice* for Ira M. Press, a partner of KMS.

g. Copying/Facsimile. This amount consists of invoices totaling $36,634.71 paid to an outside copying service (IKON) and to third-party, Boeing Company, in connection with its response to Plaintiffs' subpoena *duces tecum*. The remaining $6,170.84 represents the firm's in-house copying charges. This amount represents the Textron matter's proportional share of the copying charges expended by the firm (for each of the five years the firm was actively involved in the litigation). That charge is comprised of the leasing cost associated with the machine, the maintenance contract, paper, ink and other supplies and associated overhead (based on allocations of rent, electric, the clerk's salary and other similar general overhead charges). The firm has not attempted to adjust overhead charges for inflation during at least the past two years.

h. Electronic Legal Research. This amount includes pass-through charges ($343.61) incurred and paid by the firm for various online data resources including PACER (access to federal court dockets), Multex (analyst reports), Courtlink and others. The remaining charges ($35,381.46) represent the firm's Westlaw charges. KMS has a monthly plan with Westlaw. Westlaw charges a set monthly fee for defined searches. In connection

with each bill, a breakdown is provided of how much time was associated with particular client matters for searches within and outside the defined scope. Searches outside the defined scope (*e.g.*, a data base infrequently accessed and, therefore, not included in the monthly package) caused specific extra charges to be incurred, but these were attributable to specific matters or cases during the month. Westlaw provided a "retail value" for the includable time. KMS took the total of all "retail value" for each monthly billing period and determined each client's percentage of that total. The client percentage was then applied to the set monthly charge to allocate the set monthly charge among various clients. Extra charges for non-included searches were allocated to the appropriate client at the actual charge. The Firm, therefore, made every reasonable effort to allocate the true cost incurred for electronic legal research to the client on whose behalf the work was done. Upon further review, KMS has determined that it is appropriate to reduce the Westlaw charge to $8,622.18 and therefore has made appropriately reduced electronic research expenses by $26,759.28.

i. Long distance telephone. A portion of the telephone charges ($187.37) represents invoices paid for outside telephone vendors relating specifically to case-related phone-calls and a payment to outside vendors who provide teleconference services. With respect to the remaining charges ($1,974.67), KMS tracks its long distance telephone calls on a monthly basis. The amount charged represents a ratio of the aggregate telephone charges based upon the pro rata amount of the firm's lodestar in Textron to the total lodestar amount billed by the firm each month.

j. Postage. KMS records its postage charges on a monthly basis. The amount charged represents a ratio of the aggregate postage charges based upon the *pro rata* amount of the firm's lodestar in Textron to the total lodestar amount billed by the firm each month.

3. The Firm can supply supporting computer billing records and invoices regarding the charges reflected in Exhibit 2 to the Press Affidavit should the Court so request.

Further affiant sayeth not.

Pamela E. Kulsrud

Pamela E. Kulsrud

Sworn to before me this
22 day of May, 2006.

Notary Public

Daniel Hume
Notary Public, State of New York
No. 31-5056750
Qualified in New York County
Commission Expires 3/1/08

## REVISED LITIGATION EXPENSES

| Expense Category | Firm | | | | | |
|---|---|---|---|---|---|---|
| | KMS | Behn | Futterman | Kolb | Milberg | TOTAL |
| Photocopy & Fax | 42,805.55 | | 17,644.44 | | 13,747.00 | $74,196.99 |
| Travel, Hotel, Meals | 13,864.61 | 1,906.33 | 6,433.69 | 24.00 | 18,004.75 | 40,233.38 |
| Consultants/Investigators | 4,750.00 | 3,750.00 | 15,541.10 | | 7,440.00 | 31,481.10 |
| Electronic Legal Research | 8,965.79 | 37.25 | 5,760.39 | | 9,471.47 | 24,234.90 |
| Delivery | 1,065.39 | 98.92 | 2,294.31 | 192.33 | 546.07 | 4,197.02 |
| Mediation Fees | 4,100.00 | | | | | 4,100.00 |
| Long Distance Telephone | 2,162.04 | | 1,080.54 | | 458.12 | 3,700.70 |
| Ct. Reporters & Dep. Transcripts | 1,665.45 | | 762.45 | 234.65 | | 2,662.55 |
| Witness Fee & Filing Fees | 180.00 | | 1,607.30<br>188.61 | | 80.00 | 2,055.91 |
| Notices | | | | | 1,503.83 | 1,503.83 |
| Postage | 987.34 | | 145.64 | 37.69 | | 1,170.67 |
| Word Processing Overtime | | | | | 0 | 0 |
| Subtotal | 80,546.17 | 5,792.50 | 51,458.47 | 488.67 | 51,251.24 | **$189,537.05** |
| | | | | | | |
| Shechtman Marks Devor P.C. (Accounting) | | | | | | $39,922.75 |
| Financial Markets Analysis, LLC (Damages) | | | | | | 7,500.00 |
| Subtotal | | | | | | 47,422.75 |
| **Grand Total** | | | | | | **$ 236,959.80** |

| **LITIGATION EXPENSES** | |
|---|---|
| Photocopy & Fax | $79,600.44 |
| Electronic Legal Research | 51,465.88 |
| Travel, Hotel, Meals | 40,233.38 |
| Consultants/investigators | 31,481.10 |
| Delivery | 4,530.19 |
| Mediation Fees | 4,100.00 |
| Long Distance Telephone | 3,700.70 |
| Court Reporters & Deposition Transcripts | 2,662.55 |
| Witness Fee & Filing Fees. | 2,055.91 |
| Notices | 1,503.83 |
| Postage | 1,170.67 |
| Word Processing Overtime | 601.69 |
| Subtotal | $223,106.34 |
| **EXPERTS** | |
| Shechtman Marks Devor P.C. (Accounting) | $39,922.75 |
| Financial Markets Analysis, LLC (Damages) | 7,500.00 |
| Subtotal | 47,422.75 |
| **Grand Total** | **$270,578.47** |

Certificate of Service

I hereby certify that on the 23rd day of May, 2006, a true and accurate copy of the Supplemental Declaration of Ira M. Press in Further Support of Plaintiffs' Application For Award of Attorneys' Fees and Reimbursement of Litigation Expenses was served by first class mail, postage prepaid, upon the following:

Michael I. Behn, Esq.
Behn & Wyetzner, Chartered
55 West Wacker Drive
Suite 950
Chicago, Illinois 60601

Ira M. Press, Esq.
Mark Strauss, Esq.
Kirby McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, New York 10022

Ronald L. Futterman, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603

Kirk Chapman, Esq.
Milberg Weiss Bershad Hynes
& Lerach LLP
One Pennsylvania Plaza
New York, NY 10019

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

John A. Tarantino, Esq.
Paul V. Curcio, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

W Antrose
_______________________